USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 5/26/2016

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
INTERNATIONAL CARDS COMPANY, LTD.,  :
                                    :
                         Plaintiff, :
                                    :       13 Civ. 2576 (LGS)
          -against-                 :
                                    :       **OPINION AND ORDER**
                                    :
MASTERCARD INTERNATIONAL INC.,      :
                         Defendant. :
------------------------------------------------------------X

LORNA G. SCHOFIELD, District Judge:

Plaintiff International Cards Company, Ltd. ("ICC") sues MasterCard International Inc. ("MasterCard") over MasterCard's April 2, 2013, termination of ICC's license to issue, acquire and process credit cards in Jordan. MasterCard moved for summary judgment against ICC's claims for breach of contract, breach of the implied covenant of good faith and fair dealing and conversion, and on MasterCard's counterclaims for breach of contract and for a declaratory judgment that its drawdown of ICC's collateral was proper. For the following reasons, MasterCard's motion is granted as to ICC's claim for breach of the implied covenant of good faith and fair dealing, but denied as to all other claims.

**I.    BACKGROUND**

The following facts are taken from the parties' submissions, and are undisputed unless otherwise indicated.

MasterCard operates a global electronic payments network through a "four-party model" involving (1) cardholders that use MasterCard-branded cards for purchases, payments and cash withdrawals; (2) merchants that accept MasterCard-branded cards, (3) issuers -- the financial institutions that issue payment cards to cardholders and (4) acquirers -- the Members that contract with merchants to accept payment cards.

From 1999 to 2013, ICC was a MasterCard Principal Member, licensed in Jordan and Palestine as an issuer and an acquirer. The relationship between ICC and MasterCard was governed by MasterCard's "Rules" and the terms of licenses governing ICC's use of MasterCard's "Marks," which include MasterCard's red and yellow interlocking circles logo. New York law governs both the Rules and license agreements.

MasterCard's Rules provide as follows:

- Rule 1.6.2(3): The Corporation may, at its sole discretion, effect such termination forthwith and without prior notice if . . . The Customer fails or refuses to make payments in the ordinary course of business or becomes insolvent . . . .

- Rule 3.6.1: Upon request by the Corporation, and subject to applicable law or regulation, a Customer must provide Customer Reports to the Corporation, or to the Corporation's designee; provided, compliance with the foregoing obligation does not require a Customer to furnish any information, the disclosure of which, in the opinion of this Corporation's legal, counsel, is likely to create a significant potential legal risk to this Corporation and/or its Customer(s).

- Rule 5.1: Each Customer in its capacity as an Acquirer must directly enter into a written Merchant Agreement with each Merchant from which it acquires Transactions . . . .

- Rule 5.2.4: Each Acquirer must pay each merchant for all Transactions the Acquirer acquires from the Merchant in accordance with the Merchant Agreement and the Standards. This obligation is not discharged with regard to a Transaction until the Merchant receives payment from the Acquirer that acquired the Transaction, notwithstanding any Acquirer payment arrangement, including any such arrangement between an Affiliate and a Principal or Association.

MasterCard claims that starting in 2010 it began receiving complaints from ICC's merchants that ICC was not timely paying them for acquired transactions. MasterCard asserts that, between 2010 and 2013, it was forwarded numerous "complaints" from ICC's merchants regarding untimely payments.

MasterCard has introduced emails that show that by the end of 2011, it had begun forwarding a number of these complaints to ICC. For example, on September 8, 2011, Youssef Amin, an Associate Vice President of MasterCard, forwarded a letter from an ICC merchant that

2

states: "Concerning fund withdrawals made at our shop via MasterCard credit cards, as always there has been delay in [withdrawal] processing and transactions. Checques are delayed and are not transferred to our account unless after numerous communications and complaints . . . ." Amin's email to ICC's CEO, Khalil Alami, informed him that "late payment and poor support" was "negatively affecting our image in the market." On February 16, 2012, Basel El Tell, MasterCard's Vice President - Region Manager - Levant, wrote ICC's Alami: "As discussed with you and Hani during your visit on December 11, 2011 and in previous occasions, we are still getting merchant complaints by phone, emails, and mail, and the MasterCard Global website, about ICC delays in settlement."

On April 22, 2012, Lucas Sork, MasterCard's Vice President and Regional Counsel, sent Alami a letter entitled "Merchant complaints," which described "complaints [MasterCard had] received and continue[s] to receive from ICC Merchants." The letter requested ICC to list and describe complaints it had received from merchants, and stated that MasterCard "reserve[d] its right to take action against ICC in response to any future Complaints, which may include audits, assessments, or the termination of ICC's license and membership."

In the summer of 2012, MasterCard commissioned a third-party survey to investigate, in part, Jordanian merchants' relative experiences with MasterCard's two main Jordanian acquirers, ICC and Middle East Payment Services ("MEPS"). A questionnaire was distributed to 197 merchants in Jordan, and the results were compiled into a document entitled "Merchant Satisfaction Survey." ICC claims that the survey was biased and disagrees with MasterCard's characterization of the results.

Based on what MasterCard claims was negative feedback from ICC's merchants, a "cross-functional team" was commissioned to assess how MasterCard should respond to ICC's

ongoing late payments. On November 20, 2012, MasterCard personnel, including the President of the Middle East North Africa Region, Raghu Malhotra, met with ICC representatives in Amman, Jordan. ICC's CEO, Alami, made a presentation, which MasterCard claims was a "plan to prevent further delays in payments to merchants," but which ICC claims was just an "action plan to move forward."

On November 22, 2012, MasterCard sent ICC a "notice of assessment" stating: "MasterCard has determined that ICC has failed to pay a number of Merchants for transactions ICC acquired from those Merchants and, therefore, has violated Rule 5.2.4 (the Breach). Please be advised that MasterCard is assessing ICC USD 5,000 for the Breach." MasterCard sent a second letter that day, which assessed $5,000 for purported violations of "ICC's use of MasterCard name and trademarks (the Marks) in violation of the MasterCard Rules."

On April 2, 2013, MasterCard sent ICC a letter terminating Plaintiff's membership in MasterCard's global electronic payment system. The letter stated that "[d]espite MasterCard's notice, ICC has continued to delay payments to Merchants for transactions acquired from those Merchants." In connection with the termination (on April 1, 2013), MasterCard drew down $2.78 million on a letter of credit that ICC had posted as collateral on May 10, 2012. These funds are currently being held in MasterCard's accounts.

ICC filed suit on April 18, 2013.

## II. STANDARD

Summary judgment is appropriate where the record before the Court establishes that there is no "genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The Court must construe the evidence in the light most favorable to the nonmoving party and must draw all reasonable inferences in favor of the nonmoving party.  *See id.* at 255.

### III.     DISCUSSION

#### A.     ICC's Breach of Contract Claim and MasterCard's Counterclaim

MasterCard moves for summary judgment on the parties' respective claims for breach of contract.  For the following reasons, MasterCard's motion as to these claims is denied.

Under New York law, the elements for breach of contract are "(i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages."  *Orlander v. Staples, Inc.*, 802 F.3d 289, 294 (2d Cir. 2015) (quoting *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 142 (2d Cir. 2011)); *accord Carione v. Hickey*, 20 N.Y.S.3d 157, 158 (2d Dep't 2015).

MasterCard argues that summary judgment should be granted dismissing ICC's breach of contract claim because ICC did not perform under the contract, and because MasterCard had express contractual authority to terminate ICC's membership under MasterCard's rules.  MasterCard's contention that ICC failed to make timely payments to its merchants underpins both of MasterCard's arguments against ICC's contract claim, and is also the sole basis for one of MasterCard's two breach of contract counterclaims.  Summary judgment is inappropriate because factual disputes remain as to whether and to what extent ICC failed to make timely payments to its merchants.

MasterCard asserts that discovery "unequivocally confirmed the fact of ICC's widespread payment delays," but cites only documents reflecting what it asserts are merchant "complaints," the results of the 2012 survey and emails from ICC that MasterCard claims are admissions of late

payments. ICC disputes MasterCard's reading of each of its emails, and challenges both the truth and admissibility of the merchants' "complaints" and the survey results. Neither party has produced sworn statements from ICC's merchants to support its assertions about the timeliness of ICC's payment to its merchants. Likewise, no records from ICC establish when payments to merchants were made, either because these records do not exist or because ICC failed to produce them in discovery.

Even assuming, however, that ICC was late in paying each of the 212 merchants identified by MasterCard as having complained of late payments, a factual dispute remains as to whether this constitutes a material breach of ICC's contractual obligations.

"A party's obligation to perform under a contract is only excused where the other party's breach of the contract is so substantial that it defeats the object of the parties in making the contract." *Frank Felix Assocs., Ltd. v. Austin Drugs, Inc.*, 111 F.3d 284, 289 (2d Cir. 1997); *see also id.* (citing Restatement (Second) of Contracts § 241(a) for the proposition that "materiality depends, in part, on 'the extent to which the injured party will be deprived of the benefit which he reasonably expected'"). "The issue of whether a party has substantially performed is usually a question of fact and should be decided as a matter of law only where the inferences are certain." *Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 186 (2d Cir. 2007); *see also Bear, Stearns Funding, Inc. v. Interface Grp.-Nev., Inc.*, 361 F. Supp. 2d 283, 295 (S.D.N.Y. 2005) ("[I]n most cases, the question of materiality of breach is a mixed question of fact and law - usually more of the former and less of the latter - and thus is not properly disposed of by summary judgment.").

Factual disputes exist as to whether ICC substantially performed and whether any late payments constituted a material breach. First, the 212 merchants MasterCard identifies as

having complained of ICC's late payments represent less than 3% of the 7,000 to 8,000 merchants ICC enrolled into the MasterCard system. Even assuming that each "complaint" identified by MasterCard was valid -- i.e. that ICC was at fault for late payment -- MasterCard has failed to establish a "certain" inference that these late payments were representative of ICC's widespread practice. Absent records conclusively demonstrating when payments were made, an equally strong (if not stronger) inference from the total number of complaints is that ICC paid the vast majority of its merchants on time.

Second, the magnitude of transactions ICC handled for MasterCard until the date of termination weighs in favor of ICC's argument that it substantially performed its contractual obligations. For example, Alami testified that at the time of the termination ICC was processing over 600,000 merchant transactions annually for MasterCard. Given both the number of merchants ICC enrolled into MasterCard's system and the volume of transactions it continued to process, a finder of fact could reasonably determine that late payments to some of ICC's merchants were immaterial, and did not justify MasterCard's termination of ICC's license or membership.

Because questions of fact remain as to whether ICC substantially performed, and whether any late payments to merchants constituted a material breach, MasterCard's motion for summary judgment is denied as to the parties' respective breach of contract claims.

**B.     ICC's Breach of the Covenant of Good Faith and Fair Dealing Claim**

MasterCard next moves for summary judgment on ICC's claim for breach of the covenant of good faith and fair dealing. For the following reasons, MasterCard's motion is granted.

"[T]he implied covenant of good faith and fair dealing embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *ABN AMRO Bank, N.V. v. MBIA Inc.*, 952 N.E.2d 463, 475 (N.Y. 2011) (internal quotation marks and citation omitted). "Under New York law, a covenant of good faith and fair dealing is implicit in all contracts during the course of contract performance." *Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*, 487 F.3d 89, 98 (2d Cir. 2007). But "[t]he implied covenant can only impose an obligation consistent with other mutually agreed upon terms in the contract. It does not add to the contract a substantive provision not included by the parties." *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 198–99 (2d Cir. 2005) (internal quotation marks, alteration and citation omitted).

ICC claims that MasterCard violated the implied covenant of good faith and fair dealing by conspiring with another major acquirer, MEPS, to drive ICC out of the Jordanian market. ICC's claim for breach of the implied covenant of good faith and fair dealing turns, however, on injuries suffered from MasterCard's allegedly unlawful termination of the commercial relationship with ICC. While ICC argues that MasterCard engaged in a nefarious multi-year campaign to end the companies' business relationship, ICC does not identify any extra duty or obligation MasterCard owed ICC beyond those arising from the contracts themselves.

Because "the covenant of good faith and fair dealing . . . cannot be construed so broadly as effectively . . . to create independent contractual rights," *Peter R. Friedman, Ltd. v. Tishman Speyer Hudson Ltd. P'ship*, 968 N.Y.S.2d 41, 41 (1st Dep't 2013), ICC's allegations of a conspiracy to terminate ICC's licenses and membership are subsumed in Plaintiff's breach of contract claims, and do not state a separate cause of action. *See Harris v. Provident Life & Acc. Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2002) ("New York law . . . does not recognize a separate cause

8

of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled."); *Herbert H. Landy Ins. Agency, Inc. v. Navigators Mgmt. Co.*, No. 14 Civ. 6298, 2015 WL 170460, at *4 (S.D.N.Y. Jan. 13, 2015) (same).

MasterCard's motion for summary judgment is granted as to this claim.

### C.   ICC's Conversion Claim and MasterCard's Counterclaim for Declaratory Judgment

MasterCard moves for summary judgment on ICC's conversion claim based on MasterCard's drawdown of $2.78 million from a letter of credit ICC had posted as collateral. MasterCard also moves for summary judgment on its counterclaim for a declaratory judgment that the drawdown was authorized "[i]n light of ICC's non-payment and significant delays in paying merchants."

"A conversion takes place when someone, intentionally and without authority, assumes or exercises control over personal property belonging to someone else, interfering with that person's right of possession.  Two key elements of conversion are (1) plaintiff's possessory right or interest in the property and (2) defendant's dominion over the property or interference with it, in derogation of plaintiff's rights." *Colavito v. N.Y. Organ Donor Network, Inc.*, 860 N.E.2d 713, 717 (2006) (internal citations omitted).  ICC claims that MasterCard took control of funds pledged in a $2,780,000 standby letter of credit ("standby LC") by presenting a drawing statement to the issuing bank falsely stating that ICC had outstanding amounts due and payable. MasterCard's April 1, 2013, drawing statement stated: "We hereby demand payment . . . of the amount of USD 2,780,000 . . .  representing funds either (i) paid by any one or more of MasterCard International Incorporated, Maestro International Incorporated and each of its

9

regional licensors to MasterCard, Cirrus, or Maestro Merchants, or (ii) Due and payable to MasterCard, Cirrus or Maestro Merchants."

ICC's conversion claim is premised on the argument that there were no outstanding debts to warrant MasterCard's drawing on the standby LC.  MasterCard argues that its actions were authorized because it had a "good-faith" belief that ICC owed funds to numerous merchants. According to MasterCard, because "ICC has produced no evidence whatsoever from which it could possibly show that no funds were due and payable to MasterCard merchants," the Court should grant summary judgment against ICC's conversion claim, and in favor of Defendant's counterclaim for a declaratory judgment that the April 1, 2013, drawdown was proper.

As explained above with respect to the parties' breach of contract claims, a factual issue remains as to whether and to what extent ICC was behind in its payments to merchants. Defendant does not identify or even claim that any portion of the $2,780,000 drawn down was used to pay ICC merchants.  Indeed, MasterCard admits that it could not have paid these funds to ICC merchants because "ICC [has] failed and refused to provide" information concerning "the exact extent of the amounts owed to merchants by ICC."

Given the lack of information concerning amounts allegedly owed to ICC's merchants, MasterCard's motion for summary judgment on the parties' respective claims concerning the drawdown of the standby LC is denied.

### D.     Damages

Finally, MasterCard argues that "the Court should grant summary judgment against ICC's damages claims" because the opinion of ICC's damages expert should be excluded under *Daubert v. Merell Dow Pharmaceuticals*, 509 U.S. 579 (1993).  MasterCard also asks for summary judgment against any claim for what it asserts are "consequential damages."

As explained at the July 28, 2015, conference, any *Daubert* motion to exclude testimony from ICC's damages expert will be filed and decided after summary judgment. MasterCard's motion for summary judgment as to damages is therefore denied as premature.

## IV.     CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED with respect to ICC's claim for breach of the implied covenant of good faith and fair dealing, but DENIED as to all other claims.

The Clerk of Court is directed to close the motion at Docket No. 122.

Dated:  May 26, 2016
         New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**

11