IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| INTERNATIONAL CARDS COMPANY, LTD., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) C.A. No. 13-CV-2576 (LGS) ) |
| MASTERCARD INTERNATIONAL INC., | ) ) |
| Defendant. | ) ) ) |

**JOINT FINAL PRETRIAL ORDER**

Pursuant to Individual Rule IV.B.1, the Scheduling Order issued October 24, 2016 (D.E. 194), and the Order issued March 9, 2017 (D.E. 256), the parties in the above-captioned action submit this proposed Joint Final Pretrial Order to the Court.

**A.      FULL CAPTION OF THE ACTION**

The full caption of this action is set forth above.

**B.      APPEARANCES**

The names, law firms, addresses, telephone numbers, and email addresses of trial counsel are as follows:

<u>For Plaintiffs</u>:

Fredric S. Newman
  fnewman@hnrklaw.com
Damian R. Cavaleri
  dcavaleri@hnrklaw.com
Ilene Jaroslaw
  ijaroslaw@hnrklaw.com
Jeffrey A. Miller
  jmiller@hnrklaw.com

Miriam J. Manber
  mmanber@hnrklaw.com

Hoguet Newman Regal & Kenney, LLP
10 East 40th St., 35th Floor
New York, NY 10016
Phone: (212) 689-8808
Fax: (212) 689-5101


For Defendants:

Jay N. Fastow
fastowj@ballardspahr.com
Denise L. Plunkett
plunkettd@ballardspahr.com
Justin W. Lamson
lamsonjw@ballardspahr.com
Alexander P. Kommatas
kommatasa@ballardspahr.com
Ballard Spahr LLP
919 Third Avenue, 37th Floor
New York, NY 10022
Phone: (212) 223-0200
Fax: (212) 223-1942


Thomas F. Burke
burket@ballardspahr.com
Thomas J. Gallagher IV
gallaghert@ballardspahr.com
Ballard Spahr LLP
1735 Market St
Philadelphia, PA 19103
Phone: (215) 665-8500
Fax: (215) 864-8999


Brooke E. Pietrzak
  brooke.pietrzak@mastercard.com
MasterCard International Incorporated
2000 Purchase Street
Purchase, NY 10577
Phone: (914) 249-1324

**C.      BASIS OF FEDERAL JURISDICTION**

This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332, as this is a civil action between diverse parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

International Cards Company, Ltd. ("ICC") is a limited liability financial services company organized under the laws of Jordan, with its principal place of business in Amman, Jordan.

MasterCard International Incorporated ("MasterCard") is a Delaware corporation, with its principal place of business in Purchase, New York.

**D.      SUMMARY OF CLAIMS AND DEFENSES**

       1.      **ICC's Statement**

ICC has two claims that remain to be tried:

- First, ICC contends that MasterCard committed breach of contract by wrongfully terminating ICC's Membership in the MasterCard network.

- Second, ICC contends that MasterCard committed conversion by unlawfully drawing down on its $2,780,000 letter of credit and keeping the money.

In addition to its challenges to the various elements of each of MasterCard's counterclaims, ICC's defenses that are to be tried include the following:

- MasterCard's claims are barred, in whole or in part, by the doctrine of unclean hands.

- MasterCard is not entitled to relief because it materially breached its obligations under the parties' agreements.

- To the extent MasterCard seeks damages from conduct, acts or omission before November 2, 2010 (the date on which MasterCard executed its most recent license agreement with ICC), those claims are barred by the doctrines of waiver, estoppel, laches, release, and/or accord and satisfaction.

- MasterCard has failed to demonstrate any damages as a result of ICC's alleged conduct.

2. **MasterCard's Statement**

MasterCard disputes ICC's breach of contract claim, and contends that MasterCard was entitled to terminate ICC's MasterCard Membership and license agreements. MasterCard contends that ICC failed to pay its merchants on time and failed to provide information that MasterCard requested. MasterCard contends that ICC has not carried its burden to prove performance of its contractual obligations, and that ICC has failed to prove that MasterCard breached the parties' agreement by terminating ICC's MasterCard Membership and license agreements. MasterCard disputes that the termination of ICC's MasterCard Membership and license agreements caused any injury to ICC, in light of, *inter alia*, ICC's loss of, and failure to replace, its settlement account and ICC's actual financial condition and money-losing operations. MasterCard contends that ICC has failed to prove the amount of damages, if any, caused by the termination of its MasterCard Membership and license agreements. MasterCard also contends that ICC has failed to mitigate, minimize, offset, or avoid its claimed losses. MasterCard further contends that ICC is not entitled to the relief sought as a result of its contractual duties to indemnify and hold harmless MasterCard, and that ICC is not entitled to special, consequential, or indirect damages.

MasterCard disputes ICC's claim for conversion, and contends that MasterCard was authorized to draw down the full amount of the letter of credit provided by ICC and to hold the collateral pending resolution of this case.

The following claims were previously asserted by ICC, but are not to be tried: (1) ICC's Tortious Interference with Contract Claim, which was asserted in ICC's Amended Complaint

and which ICC abandoned by not pleading it in its Second Amended Complaint; (2) ICC's

Tortious Interference with Business Relationships and Prospective Business Relationships

Claim, which was asserted in ICC's Amended Complaint and which ICC abandoned by not

pleading it its Second Amended Complaint; (3) ICC's Defamation Claim, which was asserted in

ICC's Amended Complaint and which ICC abandoned by not pleading it in its Second Amended

Complaint and; (4) ICC's Breach of the Implied Covenant of Good Faith and Fair Dealing

Claim, which was asserted in ICC's Second Amended Complaint and was dismissed pursuant to

this Court's Summary Judgment Order and Opinion dated May 26, 2016.  *See* D.E. 136.

In addition to its challenges to each of ICC's claims, MasterCard raises the following

counterclaims:

- First, MasterCard claims that ICC breached the parties' agreement by (1) failing to pay merchants on a timely basis; (2) repeatedly delaying payments to merchants; and (3) failing to provide certain information requested by MasterCard.

- Second, MasterCard contends that ICC breached the parties' agreement by (1) misusing MasterCard's marks during the duration of the parties' contractual relationship; and (2) continuing to use MasterCard's marks after the parties' contractual relationship had ended.

- Third, MasterCard seeks a declaration that it properly drew down on the $2,780,000 letter of credit provided by ICC.  MasterCard's claim for declaratory judgment seeks equitable relief.

MasterCard contends that it has been injured by ICC's breaches and is entitled to

damages.  MasterCard reserves the right to amend this pretrial order based on, *inter alia*, Court

rulings and the positions taken by ICC.

## E.   TRIAL OF THE CASE

A jury trial is scheduled in this matter to begin on April 3, 2017.

ICC estimates that the trial will take approximately 2 weeks.

ICC estimates it will need 5 days for its case.  This estimate is based on the approximately 15 hours that ICC anticipates needing to conduct direct and redirect examination of its proposed witnesses, as listed below in Section G, and the amount of time that ICC believes it will need for cross-examination of MasterCard's witnesses, any rebuttal examination, and opening and closing statements.

MasterCard estimates that the trial will take approximately 3 weeks, based in part on ICC's refusal to stipulate to facts that are not subject to reasonable dispute.  Attached as Exhibit 7 are facts that have been admitted by ICC, are uncontroverted, or are otherwise not subject to reasonable dispute, yet to which ICC has refused to stipulate.

MasterCard estimates it will need approximately nine days to present its case.  This estimate is based on the 25-28 hours that MasterCard anticipates needing to conduct direct and redirect examination of its proposed witnesses, as listed below in Section G, and the amount of time that MasterCard believes it will need for cross-examination of ICC's witnesses, any rebuttal examination, and opening and closing statements.  MasterCard requests 1.5 hours for opening and 2 hours for closing.

MasterCard demanded a jury trial.

## F.    CONSENT TO MAGISTRATE

The parties do not consent to trial by a magistrate judge.

## G.    WITNESS LISTS:

Plaintiff's Total Trial Time Estimate:

|   | Time (in hours) |
|---|---|
| Witness direct and redirect | 15 |
| Opening | 1 |
| Closing | 1 |
| Anticipated Cross Examination and Counter | 10 |

6

| Designations | |
|---|---|
| Rebuttal | 1 |
| **Total** | **25-30** |

<u>Witnesses Plaintiff Intends To Call In Its Case In Chief:</u>

| Witness Name | Manner of Appearance | Description of Testimony | Anticipated Length of ICC's Direct & Redirect Examination (in hours) |
|---|---|---|---|
| **Will Call** | | | |
| Khalil Alami | Live | ICC's business and history; ICC's relationship with MasterCard; ICC's operations, including its operations relating to merchant payment; ICC's contracts | 5 |
| Pamela O'Neill | Live | Expert damages testimony | 2.5 |
| Stephen Ruch | By Deposition | MasterCard's correspondence and activity relating to ICC's MasterCard membership/licenses and grounds for termination | .5 |
| Shadi Abdelaziz | Live | ICC's operations, systems, and practices, including the OpenWay system | 1.5 |
| Jenifer D'Souza | Live or By Deposition | MasterCard's financial evaluations and risk assessments of ICC and MEPS; ICC's collateral; MasterCard's grounds for termination | 1 |
| Waleed Al Naser | Live or By Deposition | MasterCard's business activity and strategy in Jordan; MasterCard's grounds for termination | 1 |
| Basel El Tell | Live | MasterCard's business activity and strategy in Jordan; MasterCard's grounds for termination | 1.5 |
| Raghu Malhotra | Live or By Deposition | MasterCard's business activity and strategy in Jordan; MasterCard's grounds for termination | 2 |
| **Total Will Call Time** | | | **15 hours** |

7

Witnesses Plaintiff May Call If The Need Arises:

| Witness Name | Manner of Appearance | Description of Testimony | Anticipated Length of ICC's Direct & Redirect Examination (in hours) |
|---|---|---|---|
| May Call | | | |
| Haitham (Barakat) Said | By Deposition | MEPS's business and history; MEPS's relationship with MasterCard | .5 |
| Malek Kabajah | By Deposition | MEPS's organization and history | .2 |
| Total May Call Time | | | .7 hours |

Defendant's Total Trial Time Estimate:

| | Time (in hours) |
|---|---|
| Witness direct and redirect | 25-28 hours |
| Opening | 1.5 |
| Closing | 2 |
| Anticipated Cross Examination and Counter Designations | 20-25 |
| Rebuttal | 3 |
| Total | 46.5-54.5 |

The following chart contains MasterCard's current good faith lists of witnesses it will, and may, call at trial, respectively. The chart also includes (1) brief descriptions of each witness's expected testimony, and (2) an estimate of the amount of time MasterCard will need to question that witness, whether live or by designation. MasterCard has included certain witnesses that ICC has indicated it intends to call in its case-in-chief. MasterCard reserves the right to further amend its witness lists in light of Shadi Abdelaziz's deposition on March 22 and ICC's forthcoming summary of his trial testimony (*see* D.E. 241).

| Witness Name | Description of Testimony | Time Estimate (Direct + Redirect) |
|---|---|---|
| **Will Call List** | | |
| Al Naser, Waleed | ICC's MasterCard membership and termination; merchant complaints concerning ICC; ICC's violations of MasterCard's rules, standards and agreements with ICC; notices to ICC of violations, assessments and termination. | 2.5 |
| Creamer, Anthony | MasterCard's damages; ICC's purported damages and related financial and accounting issues | 5.5 |
| El Tell, Basel | ICC's MasterCard membership and termination; merchant complaints concerning ICC; ICC's violations of MasterCard's rules, standards and agreements with ICC; notices to ICC of violations, assessments and termination; collateral provided by ICC to MasterCard. | 5.5 |
| Gopal, Kaushik | The nature and operation of MasterCard's payment system; processing and payment systems and practices used by payment card acquirers, including in the Middle East; integrity of the MasterCard System; ICC's processing and payment systems and practices; the nature of the harm that ICC's failures caused to MasterCard. | 2.0 |
| Malhotra, Raghu | ICC's MasterCard membership and termination and ICC's violations of MasterCard's rules, standards and agreements with ICC. | 2.5 |
| Alami, Leen | ICC's fabrication of false assets and income | 1 |
| **Total Will Call Time** | | **19.0** |
| **May Call List** | | |
| D'Souza, Jenifer | ICC's MasterCard Membership, MasterCard's Rules concerning collateral, review of collateral and collateral provided by ICC to MasterCard and, and MasterCard's draw down on ICC's letter of credit. | 2.0 |
| Idris, Hani (By Deposition) | Merchant and other complaints concerning ICC and admissions in ICC's strategic planning | 1 |

| Kabajah, Malek (By Deposition) | Payment card industry practices in Jordan; merchant and other complaints concerning ICC | 0.5 |
|---|---|---|
| Pothen, Beena | ICC's MasterCard membership and termination; merchant complaints concerning ICC; ICC's violations of MasterCard's rules, standards and agreements with ICC; notices to ICC of violations, assessments and termination. | 1.5 |
| Said (Barakat), Haitham (By Deposition) | Payment card industry practices in Jordan; merchant and other complaints concerning ICC | 0.5 |
| **Total May Call Time** | | **6.5** |

## H.   DEPOSITION DESIGNATIONS

The Plaintiff's and the Defendant's deposition designations (including counter-designations and objections) are attached as Exhibits 1 and 2, respectively.  The parties have agreed to defer providing final deposition designations to opposing counsel until no less than 72 hours before their proffer.  Counter-designations shall be provided within the next 24 hours.  Each party reserves the right to use any of its affirmative designations as counter-designations, where appropriate, at trial.  New designations or counter-designations may not be added without good cause.

## I.   PROPOSED EXHIBITS AND DEMONSTRATIVE AIDS

The Plaintiff's and the Defendant's exhibit lists, accompanied by objections thereto, are attached as Exhibits 3 and 4, respectively.  The parties have stipulated that all exhibits produced by the parties are authentic.  Although these lists do not include the parties' demonstrative exhibits, compilations, or summaries, the lists include the sources for any such exhibits.  The parties have agreed to defer providing demonstrative aids, demonstrative exhibits, compilations, and summaries to opposing counsel until no less than three trial days in advance of their anticipated use at trial.

**J.      WRITTEN DISCOVERY RESPONSES**

The Plaintiff's and the Defendant's admissions, interrogatory answers or other written

discovery responses to be offered into evidence, accompanied by objections thereto, are attached

as Exhibits 5 and 6, respectively.

**K.      LIST OF *IN LIMINE* MOTIONS:**

| Motion *in Limine* | ECF of Notice of Motion | Status | ECF No. of Order (if any) |
|---|---|---|---|
| ICC's Motion *in Limine* to Exclude Expert Testimony and Reports of Kaushik Gopal and Anthony Creamer | 153 | Denied | D.E. 277 |
| ICC's Motion *in Limine* to Preclude the Admission of Certain Evidence at Trial (Irrelevant and Prejudicial: Alami Receivables and Settlement Account) | 177, 179 | Granted in part, Pending | Court Draft Order March 9, 2017 |
| ICC's Motion *in Limine* to Preclude the Admission of Certain Evidence at Trial (2012 Merchant Satisfaction Survey) | 177, 180 | Pending | |
| MasterCard's Motion *in Limine* to Exclude the Testimony and Report of Pamela O'Neill | 150 | Granted in part, Denied in part | D.E. 277 |
| MasterCard's Motion *in Limine* Number 1: MasterCard's Motive and Other Alleged "Bad Acts" | 181 | Granted in part, Denied in part | Court Draft Order March 9, 2017 |
| MasterCard's Motion *in Limine* Number 2: Notice and Cure Termination Provisions of License Agreements | 184 | Granted | Court Draft Order March 9, 2017 |
| MasterCard's Motion *in Limine* Number 3: After-Acquired Evidence | 186 | Granted | Court Draft Order March 9, 2017 |
| MasterCard's Motion *in Limine* Number 4: ICC Merchant Agreement Amendment | 188 | Denied as moot | Court Draft Order March 9, 2017 |
| MasterCard's Motion *in Limine* Number 5: Evidence Preclusion and Adverse Presumptions as Discovery Sanctions | 190 | Granted in part, Denied in part | D.E. 257 |

| Motion *in Limine* | ECF of Notice of Motion | Status | ECF No. of Order (if any) |
|---|---|---|---|
| MasterCard's Motion to Review The Magistrate Judge's October 5, 2016 Order | 202 | Pending | |
| ICC's Objection to Magistrate Judge Netburn's Ruling on masterCard's Motion *in Limine* No. 5 | 265 | Pending | |

## L.     STIPULATION OF UNCONTESTED FACTS

For use in this litigation and for no other purpose, the parties stipulate to the following uncontested facts:

1.      Plaintiff International Cards Company, Limited, also referred to as ICC, is a public company based in Amman, Jordan.

2.      ICC was established as a limited liability financial services company in 1999, and became a publicly held company in 2006.  Its stock has traded on the Amman Stock Exchange under the symbol "CARD" since 2008.

3.      Since 2006, Khalil Alami has been the Chief Executive Officer of ICC.

4.      At all relevant times, Makram Alami was the Chairman of the Board of ICC.

5.      Makram Alami is the Chairman of the Board and General Manager of International Brokerage and Financial Markets, a financial services firm based in Amman, Jordan.

6.      International Brokerage and Financial Markets owns between 22 and 23% of ICC's shares.

7.      Defendant MasterCard International Incorporated is a Delaware corporation based in Purchase, New York.

8.     MasterCard is a technology company in the payments industry, which connects consumers, financial institutions, merchants, governments and businesses worldwide.

9.     MasterCard became a publicly held company in 2006.  Its stock trades on the New York Stock Exchange.

10.     MasterCard facilitates the processing of electronic payment transactions, including authorization, clearing and settlement of payment card transactions through an open network.

11.     MasterCard offers payment solutions and services through several well-known brands, including MasterCard, MasterCard Electronic, Cirrus and Maestro.

12.     MasterCard does not issue payment cards to cardholders, set terms relating to interest and fees charged to cardholders, or engage in collecting cardholder debts.

13.     As used in this case, any references to "MasterCard cards" refers to MasterCard-branded payment cards.

14.     MasterCard operates a payment network known as a "four-party system".  The four parties in the MasterCard system are cardholders, merchants, issuers, and acquirers.  This payment network is referred to as the MasterCard Network, the MasterCard System or the MasterCard Scheme.

15.     A "cardholder" is a person who uses a MasterCard-branded payment card to obtain cash, or purchase goods or services from a merchant that accepts MasterCard-branded payment cards.  A "payment card" is a credit card, debit card, or prepaid card.

16.     An "issuer" is a financial institution or other authorized entity that issues MasterCard-branded payment cards to cardholders.  An issuer extends credit to cardholders, determines the interest rates and other fees charged to cardholders, and sets most of the other

terms of cardholders' payment card accounts.  An issuer collects payments from cardholders, engages in collection efforts for delinquent accounts, and typically bears the credit risk associated with cardholders' payment card transactions.

17.     Cardholders enter into contracts with issuers.  They do not contract with MasterCard directly.

18.     A "merchant" is a store or other business that may accept MasterCard-branded payment cards as payment for goods or services.  The merchant sells these transactions to its acquirer at a discount in exchange for payment by the acquirer.  The discount is often referred to as the "merchant discount fee."

19.     An "acquirer" is a financial institution or other authorized entity that enters into contractual relationships with merchants to acquire MasterCard-branded payment card transactions.  The acquirer provides a point-of-sale terminal or other facilities to each of its merchants, so that its merchants are able to enter into payment card transactions with cardholders.  The merchant is entitled to receive payment for that transaction from the acquirer, subject to the terms of the merchant's agreement with its acquirer, minus the merchant discount fee agreed by the acquirer and merchant.

20.     Merchants enter into contracts with acquirers.  MasterCard does not acquire transactions from merchants.

21.     MasterCard is not one of the four "parties" to a payment card transaction. MasterCard contracts with issuers and acquirers.  Issuers and acquirers participating in the MasterCard network are referred to as MasterCard members or customers.

22.     MasterCard's Rules define "Marks" as: "The names, logos, trade names, logotypes, trademarks, service marks, trade designations, and other designations, symbols, and

marks, including but not limited to the MasterCard Brand Mark and the MasterCard Word Mark, that MasterCard and/or its affiliates of subsidiaries own, manage, license, or otherwise control and make available for use by Customers and other authorized entities.  A Mark means any one of the Marks."

23.     ICC acted as both an issuer of MasterCard-branded payment cards and an acquirer of MasterCard-branded payment card transactions.

24.     Other MasterCard members include Bank of America, Citibank, and Capital One Bank, and many more.

25.     MasterCard's Rules define "Activity" as: "The undertaking of any act that can be lawfully undertaken only pursuant to a License by the Corporation."

26.     ICC had no right of exclusivity to conduct MasterCard Activity in any territory.

27.     "Settlement" is the process by which by which issuers pay funds to acquirers.

28.     MasterCard Members are required to maintain a bank account known as a "settlement account."  During the course of any given business day, Members participate in a "clearing" process by which they send and receive data regarding cardholder and merchant transactions.  "Settlement" occurs by crediting or debiting funds to Members' settlement accounts.

29.     From December 23, 1999 until April 2, 2013, ICC was granted a MasterCard Membership and related brand licenses, allowing it to issue MasterCard-branded payment cards, and to acquire MasterCard-branded payment card transactions from merchants.

30.     ICC and MasterCard signed several license agreements, each of which incorporated MasterCard's rules and standards ("Rules") by reference.  Together, MasterCard's Rules and license agreements comprised ICC's contract with MasterCard.

31.     New York law governs ICC's contract with MasterCard.

32.     ICC's standard forms of its merchant agreements provided that ICC "shall pay the total value of the valid sales receipts submitted for collection, when produced, after deducting and paying the agreed upon commission of (_)% and shall do so within (_) business days of the date of receipt."  In almost all instances, the payment term was "within 5 business days of the date of receipt."

33.     ICC and its merchants together set the terms of the merchant agreements.

34.     "Accounts payable" are debts owed by a company in the ordinary course of business.

35.     "Receivables" or "Accounts Receivable" are debts owed to a company for goods or services, or extensions of credit.

36.     "Reconciliation" is a procedure for ensuring that two sets of records, usually accounts, are in agreement.

37.     "Aging of accounts" refers to the time that has passed since the receivable came into existence.

38.     ICC used a sophisticated and well-regarded transaction processing system from OpenWay to process card transactions and calculate daily settlement amounts due to merchants.

39.     ICC exported the daily settlement amounts to separate check-writing software.

40.     ICC did not have an automated accounts-payable reconciliation system to balance the amounts it owed to merchants with the amounts that it had paid to the merchants.

41.     ICC had no automated capability to prepare a report of the aging of its accounts payable to its merchants.

42.     The only method ICC had for trying to determine whether a particular merchant had received payment, for the MasterCard-branded transactions that ICC had acquired from that merchant was to manually search for and review ICC's paper check stubs, paper bank deposit slips, and any undelivered-checks made payable to the merchant, and then manually compare those paper records with the merchant's transaction history (the transactions acquired by ICC from that merchant) from ICC's OpenWay system.

43.     At all relevant times, the exchange rate is 1 Jordanian dinar equals 1.41 US dollars.

44.     "Assets" are the entries on a balance sheet showing the items of property owned, including cash, inventory, equipment, real estate, accounts receivable, and goodwill.

45.     "Cardholder receivables" are debts owed to an issuer by cardholders.

46.     ICC's cardholder receivables represented ICC's largest asset in the years prior to, and at the time of, the termination of ICC's MasterCard Membership in April 2013.

47.     "Cash flow" is cash receipts minus cash disbursements for a given period.

48.     "Market capitalization" refers to the total dollar market value of a company's outstanding shares.

49.     On November 22, 2012, MasterCard sent ICC two Notices of Assessment.

50.     The first Notice of Assessment levied an assessment of $5,000 for ICC's alleged Category B violation of Rule 5.2.4, which states that "Each Acquirer must pay each Merchant for all Transactions the Acquirer acquires from the Merchant in accordance with the Merchant Agreement and the Standards."

51.     The second Notice of Assessment levied an assessment of $5,000 for ICC's alleged Category B violation of the Rules pertaining to the use of MasterCard's Marks.

17

52.     Under the Rules, MasterCard could have assessed ICC up to $20,000 for its first Category B violation of each Rule, followed by up to $30,000 for a second violation and up to $60,000 for a third violation within 12 months, with subsequent violations within 12 months capable of being assessed at amounts of up to $100,000 per violation.

53.     In January or February 2010, ICC provided to MasterCard as collateral a letter of credit of $1.72 million.

54.     In February 2012, MasterCard notified ICC that it was required to provide additional collateral of approximately $2.78 million to MasterCard.

55.     ICC posted the additional collateral in the form of a Standby Letter of Credit in the amount of $2.78 million.

56.     On April 2, 2013, MasterCard sent a letter to ICC stating that ICC's "membership in MasterCard International Incorporated (MasterCard) and brand licenses for MasterCard and Maestro (and any other related licenses) have been terminated effective 2 April 2013 (Termination Date), as specified in the MasterCard Rule 1.6.2."

57.     On April 1, 2013, MasterCard drew down on ICC's Standby Letter of Credit in the full amount of $2.78 million.

58.     MasterCard did not draw down on the $1.72 million letter of credit.

59.     The $2.78 million in collateral from the Standby Letter of Credit is being held in MasterCard's accounts.

60.     ICC commenced this lawsuit on April 18, 2013, sixteen days after the termination of its MasterCard Membership and license agreements.

61.     MasterCard asserted counterclaims against ICC for breach of contract on September 13, 2013.

18

## M.    DAMAGES STATEMENT

ICC seeks damages of no less than $40 million plus prejudgment interest at the statutory rate of 9% per year commencing on April 2, 2013, in the amount of approximately $14.4 million. These damages consist of the following components:

- Breach of contract: MasterCard business – $30.7 million

- Breach of contract: ATM network – $4.7 million

- Breach of contract: Quds Bank processing revenue – $2 million

- Conversion: letter of credit – $2.78 million

- Prejudgment interest – $14.4 million

MasterCard had the express right to terminate ICC's Membership under the parties' contract [*ICC objects to Mastercard's inclusion of this contention in the Damages Statement of a Joint Pretrial Order*].  MasterCard denies that ICC suffered any causal injury and disputes both ICC's entitlement to damages and ICC's calculation thereof.  Additionally, MasterCard seeks counterclaim damages for breach of contract of approximately $2.3 million to $2.7 million, which it will compute at trial, plus allowable interest.

## N.    OTHER REQUESTED RELIEF

Pursuant to its Counterclaims (D.E. 15), MasterCard requests that this Court enjoin ICC from using MasterCard's Marks and from holding itself out as affiliated with MasterCard. MasterCard also requests that this Court enter an order declaring that MasterCard's April 1, 2013 drawing down on the letter of credit was proper, and awarding any such other further relief as the court deems appropriate, including allowing MasterCard to collect any counterclaim damages awarded from the collateral retained.

**O.     UNANIMOUS VERDICT**

Plaintiff consents to a less than unanimous verdict.  Defendant does not consent to a less than unanimous verdict.

**P.     MISCELLANEOUS ISSUES TO BE ADDRESSED**

       1.     **ICC's Statement**

MasterCard has continued to list Leen Alami as a trial witness.  Ms. Alami is Khalil Alami's sister.  She has no position with ICC and had no involvement in any of the issues in this case.  Mastercard spent two hours taking Ms. Alami's deposition on March 3, 2013, during which time she confirmed her lack of involvement with ICC and the issues in this case.  Ms. Alami was never listed in disclosures by either side as a person with knowledge of the facts.  Ms. Alami is a junior associate in the corporate department of a law firm in Philadelphia.  ICC intends to move to quash the trial subpoena when served.

ICC has filed an Objection to Magistrate Judge Netburn's ruling on MasterCard's Motion *in Limine* No. 5, which granted an adverse inference instruction regarding ICC's merchant records, on the basis that it is clearly erroneous and contrary to law. (D.E. 265).

ICC intends to seek reconsideration of the Court's Order regarding MasterCard's Motions *in Limine*.

ICC would like to discuss certain portions of the Court's proposed Voir Dire and Preliminary Jury Instructions.

The extent to which Mr. Fastow can be involved in the trial as he cannot be considered Principal Trial Counsel based on Your Honor's Rule IV.A.1.

       2.     **MasterCard's Statement**

MasterCard anticipates raising the following issues at or before the final pre-trial conference:

- In light of the Court's recent orders, MasterCard requests leave to file a renewed motion for summary judgment on plaintiff's breach of contract claim and its related alleged damages.  MasterCard requests briefing on such a motion on an expedited bases

- MasterCard's motions relating to the rulings on the motions in limine.

- MasterCard requests the inclusion in the Court's preliminary instructions of the adverse inference instruction set forth in the Order On Motion In Limine No. 5 (D.E. 257).

- MasterCard requests leave to renew its trial subpoena for the testimony of Leen Alami to adduce testimony concerning ICC's fabrication of false assets and income.

- MasterCard requests advance notice of if and when ICC intends to call MasterCard employee Ian Webb (Group Head, Customer Risk Management) in its case-in-chief.

- MasterCard requests that ICC's proposed verdict sheet be stricken.  ICC filed a proposed verdict sheet that it never provided to MasterCard prior to filing, and which differs dramatically from the ICC-proposed verdict sheet on which the parties met and conferred.

- The Court's procedures regarding motions for judgment as a matter of law and the timing of such motions.

- The Court's procedures for anticipated motions to strike.

- The Court's procedures regarding the trial of MasterCard's equitable claim and ICC's defenses thereto in connection with a jury trial.

- The Court's procedures for presenting stipulated facts to the jury.

- The Court's procedures regarding MasterCard witnesses called in ICC's case-in-chief.

- The Court's procedures concerning the sequestration of witnesses, corporate representatives, and communication with witnesses during their testimony.

- The Court's procedures regarding the introduction of witnesses to the jury.

- The Court's procedures regarding interim arguments during trial.

- The Court's procedures regarding use of pre-admitted exhibits in opening.

Dated: March 14, 2017                      Respectfully submitted,

/s/ Fredric S. Newman                      /s/ Jay N. Fastow
Fredric S. Newman                          Jay N. Fastow
fnewman@hnrklaw.com                        FastowJ@BallardSpahr.com
Hoguet Newman Regal & Kenney LLP           Ballard Spahr LLP
10 East 40th Street, 35th Floor            919 Third Avenue, 37th Floor
New York, NY 10016                         New York, NY 10022
Telephone: (212) 689-8808                  Telephone: (212) 223-0200
Facsimile: (212) 689-5101                  Facsimile: (212) 223-1942

*Attorney for Plaintiff*                   *Attorney for Defendant*
*International Cards Company*               *MasterCard International Incorporated*