UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                             :
INTERNATIONAL CARDS COMPANY, LTD.,                           :
                                              Plaintiff,     :
                                                             :     13 Civ. 2576 (LGS)
                    -against-                                :
                                                             :     **OPINION AND ORDER**
MASTERCARD INTERNATIONAL INC,                                :
                                              Defendant.     :
------------------------------------------------------------ X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__03/24/17____

LORNA G. SCHOFIELD, District Judge:

For the third time, Defendant MasterCard International Inc. ("MasterCard") moves for summary judgment on Plaintiff International Cards Company, Ltd.'s ("ICC") breach of contract claim. For the reasons explained below, the motion is granted.

## I.   BACKGROUND

Familiarity with the underlying allegations and procedural history is assumed. *See Int'l Cards Co. v. MasterCard Int'l Inc.*, No. 13 Civ. 2576, 2016 WL 3039891, at *1–3 (S.D.N.Y. May 26, 2016). New York contract law applies. *Id.* at *1. The following facts are taken from the parties' submissions and are undisputed.

From 1999 until April 2, 2013, ICC was granted a MasterCard Membership and related brand licenses. During this period, the parties executed license agreements that incorporated by reference MasterCard's Rules and Standards ("Rules"). MasterCard's Rules and the operative license agreements comprised ICC's contract with MasterCard.

The Rules governed ICC's Membership in the MasterCard system. They apply to all Members, which are referred to as Customers.

Rule 1.6 governs "Termination of Participation" in the MasterCard system. At issue on this motion is Rule 1.6.2, "Termination by the Corporation." It states in pertinent part:

> A Customer [i.e., ICC] may be terminated as a Customer by the Corporation [i.e., MasterCard]. The termination is effective upon delivery, or an inability to deliver after a reasonable attempt to do so, of written or actual notice by the Corporation to the Customer.
>
> The Corporation may, at its sole discretion, effect such termination forthwith and without prior notice if:
> . . .
> 3. The Customer fails or refuses to make payments in the ordinary course of business or becomes insolvent . . . .

The second paragraph of Rule 1.6.2, quoted in part above, contains a total of eight subparts, including subpart 3 quoted above. Each subpart describes a circumstance concerning a Customer's business operations, such as being placed in liquidation or failing to do business for 26 consecutive weeks.

Rule 1.6.1 governs termination by a Customer. It states in part: "A Customer may voluntarily terminate its Participation . . . . In order to voluntarily terminate as a Customer, a Customer must give written notice addressed to the Secretary of this Corporation . . . ." Rule 1.6.1 does not require a Customer to provide a reason for termination, although the date on which the Customer's termination is to take effect must be "at least thirty days after the notice is received by the Secretary."

On April 2, 2013, ICC received a letter from MasterCard, stating ICC's "principal Membership in MasterCard . . . and brand licenses for MasterCard . . . have been terminated effective 2 April 2013 (**Termination Date**), as specified in MasterCard Rule 1.6.2."

## II.    STANDARD

Summary judgment is appropriate where the record before the Court establishes that there is no "genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must construe the evidence in the light most favorable to the nonmoving party and must draw all reasonable inferences in favor of the nonmoving party. *Id.* at 255.

### III. DISCUSSION

Summary judgment is granted in MasterCard's favor on ICC's breach of contract claim because the parties' contract authorized MasterCard's termination of ICC's Membership and the license agreements.

#### A. The Contract

"Under New York law, the initial interpretation of a contract is a matter of law for the court to decide. The key inquiry at this initial interpretation stage is whether the contract is unambiguous with respect to the question disputed by the parties." *Int'l Multifoods Corp. v. Commercial Union Ins. Co.*, 309 F.3d 76, 83 (2d Cir. 2002) (internal quotation marks and citation omitted); *see also Law Debenture Trust Co. v. Maverick Tube Corp.*, 595 F.3d 458, 465 (2d Cir. 2010) ("The matter of whether the contract is ambiguous is a question of law for the court."). "[A] written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms." *Greenfield v. Philles Records, Inc.*, 780 N.E.2d 166, 170 (N.Y. 2002).

Rule 1.6.2 is unambiguous as a matter of law and confers on MasterCard the unconditional right to terminate ICC's Membership. The first sentence provides in full, "A Customer may be terminated as a Customer by the Corporation." The next sentence states when that termination ordinarily is effective -- "The termination is effective upon delivery . . . of written or actual notice by [MasterCard] to [ICC]." The next sentence, which also begins a new paragraph, provides for a possibly earlier date of termination -- "The Corporation may . . . effect

such termination forthwith and without prior notice if" any of the eight enumerated circumstances arise. (MasterCard explained at oral argument that it can effect termination by locking a Customer out of the MasterCard system.)

The circumstances enumerated in Rule 1.6.2's subparts concern timing only -- i.e., *when* termination is effective. If one of the enumerated circumstances is present, MasterCard may effect the termination "forthwith" rather than "upon delivery . . . of . . . notice." Nothing in the language of Rule 1.6.2's limits MasterCard's right to terminate to the circumstances in the eight subparts.

This interpretation comports with a Customer's termination rights under Rule 1.6.1. Under this Rule, a Customer also has the right to terminate for no reason -- "A Customer may voluntarily terminate its Participation." Termination cannot be accomplished without providing written notice -- "In order to voluntarily terminate . . ., the Customer must give [thirty-days] written notice . . . ." The provision imposes no other limitations on a Customer's right to terminate, and a Customer need not give any reason to terminate its participation. All that is required is the specified notice. Rule 1.6.2 thus reciprocates in giving MasterCard the right to terminate when it gives actual notice to a Customer. It would be incongruous if MasterCard's own Rules gave ICC the unilateral right to terminate while limiting MasterCard's right to the circumstances listed in Rule 1.6.2's subparts.

In this case, MasterCard's termination of ICC's Membership was effective upon delivery of the April 2013 letter. Rule 1.6.2 authorized termination in this manner. Indeed, the termination letter cites Rule 1.6.2 without specifying any subpart. The April 2013 letter also properly terminated the parties' operative licensing agreements as those agreements provide for termination of ICC's licenses "forthwith" if ICC "ceases to be a member" of MasterCard. As

MasterCard had the legal authority to terminate ICC's Membership upon the delivery of written notice, it has a valid legal defense to ICC's claim for breach of contract based on lawful termination.

ICC's argument to the contrary is unpersuasive. It asserts that, because there is no explicit "unconditional termination clause," the Rules limit termination to "for cause" termination. According to ICC, the "cause" must be one of the circumstances listed in the eight subparts to Rule 1.6.2. But this interpretation conflicts with the contract's plain language, which is not conditional, and New York contract law. Where, as here, a contract does not explicitly state that cause is required for termination, "New York law requires that a court infer that the contract is terminable without cause." *Cybercreek Entm't, LLC v. U.S. Underwriters Ins. Co.*, No. 16 Civ. 424, 2016 WL 7374233, at *3 (W.D.N.Y. Dec. 20, 2016); *see, e.g.*, *Joseph Victori Wines, Inc. v. Vina Santa Carolina S.A.*, 933 F. Supp. 347, 352 (S.D.N.Y. 1996) (collecting cases).

The Court must interpret the termination clause as it is written. *See, e.g.*, *TransformaCon, Inc. v. Vista Equity Partners, Inc.*, No. 15 Civ. 3371, 2015 WL 4461769, at *8 (S.D.N.Y. July 21, 2015) ("Under New York law, termination clauses must be enforced as written, including those allowing termination at any time or without cause."). Here, the clause authorizes MasterCard to terminate ICC's membership without limitation as to time or cause, effective "upon delivery . . . of written or actual notice."

### B. Estoppel

ICC also argues that principles of estoppel bar MasterCard from advancing its "alternative interpretation" of the contract just weeks before trial. This action has been pending since 2013. The parties apparently conducted discovery and motion practice to address the issue

5

of whether MasterCard's termination of ICC was authorized and effective "forthwith" under subpart 3 of Rule 1.6.2. MasterCard admits that it did not expressly rely on an unconditional right to terminate as a legal basis for termination until recently. Despite its appeal, ICC's estoppel argument does not bar MasterCard from raising a valid legal defense, although the circumstances may warrant some relief to ICC.

ICC first points to MasterCard's Counterclaims, specifically, the allegation that "a member may be terminated by MasterCard" in accordance with subpart 3 of Rule 1.6.2. This argument is rejected for two reasons. First, MasterCard's Counterclaim is independent of ICC's breach of contract claim. The allegation in MasterCard's Counterclaim does not preclude it from proceeding on a different theory in defending against ICC's breach of contract claim. Indeed, the allegation cited by ICC does not conflict with MasterCard's current position; the allegation says nothing about whether MasterCard may also terminate by providing a notice. Second, the allegation is not a binding judicial admission by MasterCard that one of the circumstances listed in Rule 1.6.2's subparts must arise before MasterCard may terminate. "A party's *assertion of fact* in a pleading is a judicial admission by which it normally is bound throughout the course of the proceeding." *Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*, 757 F.2d 523, 528 (2d Cir. 1985) (emphasis added). The issue raised by this motion is a question of law -- whether the contract unambiguously authorizes MasterCard to terminate by providing written notice. Any allegation in a pleading regarding how to interpret the contract is legal argument, not an "assertion of fact." *Bellefonte Re Ins. Co.*, 757 F.2d at 528; *cf. Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005) (noting that courts "are not obliged to accept the allegations of the complaint as to how to construe" a party's contract).

ICC also cites the deposition testimony of one of MasterCard's senior vice presidents. This testimony is irrelevant because the interpretive question raised by this motion is a question of law, not fact. *See Int'l Multifoods Corp.*, 309 F.3d at 83. Evidence about MasterCard's subjective motivation in terminating the contract, and a witness's opinion about the meaning of a contract, are not relevant to the legal interpretation of an unambiguous contract. *See W.W.W. Assocs., Inc. v. Giancontieri*, 566 N.E.2d 639, 642 (N.Y. 1990) (observing that extrinsic evidence "is not admissible to create an ambiguity in a written agreement which is complete and clear and unambiguous upon its face").

ICC's last estoppel argument is based on an interrogatory answer. In response to an interrogatory requesting MasterCard to "[s]tate the subpart(s) of MasterCard's Rule 1.6.2 on which MasterCard's termination of ICC is based," MasterCard answered in part:

> MasterCard's termination of ICC was based on ICC's repeated violations of multiple provisions of MasterCard's [Rules] . . . including but not limited to Rule 1.6.2, which provides that a member may be terminated by MasterCard, at MasterCard's sole discretion, forthwith and without prior notice, if, *inter alia*, "the [member] fails or refuses to make payments in the ordinary course of business."

ICC argues that the MasterCard's response to this "contention interrogator[y], like statements in pleadings are judicial admissions," and consequently estop MasterCard from asserting a different interpretation of the contract. Courts have recognized that "[c]ontention interrogatories are treated as judicial admissions which usually estop the responding party from later asserting positions not included in its answers." *See In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, No. 08 Civ. 312, 2014 WL 494522, at *2 (S.D.N.Y. Feb. 6, 2014).[1]

---

[1] Preclusion is not mandatory and "[t]rial judges are given broad discretion to relieve the parties from the consequences of judicial admissions in the appropriate circumstances." *In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.*, 379 F. Supp. 2d 348, 371 (S.D.N.Y. 2005); *see*

ICC's argument fails.  First, MasterCard's response did not constitute an unequivocal admission that its sole legal authority for the termination was ICC's alleged failure to pay in accordance with subpart 3 of Rule 1.6.2.  *See Meehancombs Glob. Credit Opportunities Master Fund, LP v. Caesars Entm't Corp.*, 162 F. Supp. 3d 200, 212 (S.D.N.Y. 2015) (holding that statement was not a judicial admission where it was not "unequivocal[]"); *Hausler v. JP Morgan Chase Bank, N.A.*, 127 F. Supp. 3d 17, 37 (S.D.N.Y. 2015) ("Judicial admissions must be clear and unambiguous admission[s] of fact." (internal quotation marks omitted)).  MasterCard's asserted basis for termination -- i.e., ICC's alleged failures to make payments -- is distinct from the legal question of whether the contract authorized MasterCard to effect termination by delivering written notice.  MasterCard's underlying motivation for terminating the contract, whether well-founded or not, is irrelevant.  *See, e.g.*, *Triton Partners LLC v. Prudential Sec. Inc.*, 752 N.Y.S.2d 870, 870–71 (1st Dep't 2003) ("A party has an absolute, unqualified right to terminate a contract on notice pursuant to an unconditional termination clause without court inquiry into whether the termination was activated by an ulterior motive." (internal quotation marks omitted)).

Second, even assuming MasterCard's current interpretation is inconsistent with a prior one, any prior interpretation is not a binding judicial admission.  Judicial admissions "are statements of fact rather than legal arguments made to a court."  *New York State Nat'l Org. for Women v. Terry*, 159 F.3d 86, 97 n.7 (2d Cir. 1998).  A party's "statements of [its] theory of the

---

8B Charles Alan Wright, Arthur R. Miller, & Richard L. Marcus, *Federal Practice and Procedure* § 2181 (3d ed. 2010) ("Although interrogatory answers -- like other discovery responses -- may properly limit issues and foreclose avenues of proof, those consequences should only follow when appropriate."); *Grace v. United States*, 754 F. Supp. 2d 585, 599 (W.D.N.Y. 2010) ("The Second Circuit has not ruled that interrogatory responses are binding judicial admissions . . . .").

case do not constitute judicial admissions." *Id.*; *see, e.g.*, *Okwedy v. City of New York*, 195 F. App'x 7, 9 (2d Cir. 2006) (summary order) (noting that "statements [that] are legal theories rather than facts . . . cannot constitute binding judicial admissions attributable to the [defendant]").  Whether the contract unambiguously entitles MasterCard to terminate by delivering notice is a question of law.  MasterCard's contract interpretation is thus a legal argument rather than a factual statement.  Accordingly, MasterCard's prior interpretation is not a judicial admission that precludes MasterCard from asserting the legally correct interpretation of the contract.  *See Buchman v. Weiss*, No. 08 Civ. 5453, 2009 WL 2044615, at *4 (S.D.N.Y. July 15, 2009) (rejecting argument that the defendants were precluded from asserting an interpretation of contract because they "advanc[ed] a contrary interpretation" earlier, explaining that the defendants' prior interpretation "represent[ed] [their] theory of interpretation of the language of the Agreement rather than factual statements, and, as such, are not judicial admissions"); *see generally Fiedler v. Incandela*, --- F. Supp. 3d ----, No. 14 Civ. 2572, 2016 WL 7406442, at *7 (E.D.N.Y. Dec. 6, 2016) ("[I]t is well established that judicial admissions on questions of law have *no* legal effect." (internal quotation marks omitted)).

Lastly, ICC argues that MasterCard's motion is procedurally improper because MasterCard's interpretation could have been raised in the first summary judgment motion. "[D]istrict courts enjoy considerable discretion in entertaining successive dispositive motions." *Sira v. Morton*, 380 F.3d 57, 68 (2d Cir. 2004); *see, e.g.*, *Grabin v. Marymount Manhattan Coll.*, No. 12 Civ. 3591, 2015 WL 4040823, at *10 (S.D.N.Y. July 2, 2015) ("Although successive summary judgment motions are disfavored, . . . a district court may in its discretion review a successive summary judgment motion seeking precisely the same relief as before."); *Hill v. Rayboy-Brauestein*, No. 02 Civ. 3770, 2008 WL 231439, at *2–3 (S.D.N.Y. Jan. 24, 2008)

9

("There can be no doubt that district courts have authority to permit parties to file supplemental summary judgment motions . . . ."). It is appropriate to consider MasterCard's motion here. The Court has never addressed the contract question at issue or ruled that subpart 3 is the sole avenue by which MasterCard sought termination. To the extent ICC argues the law of the case doctrine applies, that argument is rejected. The law of the case doctrine does not apply where, as here, the court was never "squarely presented with the question" at issue, i.e., whether the contract unambiguously gives MasterCard the right of unconditional termination. *Stichting Ter Behartiging Van de Belangen Van Oudaandeelhouders In Het Kapitaal Van Saybolt Int'l B.V. v. Schreiber*, 407 F.3d 34, 44 (2d Cir. 2005). Regardless, the doctrine is "discretionary and does not limit a court's power to reconsider its own decisions prior to final judgment." *Maraschiello v. City of Buffalo Police Dep't*, 709 F.3d 87, 97 (2d Cir. 2013) (internal quotation marks omitted). Although the Court is troubled by MasterCard's failure to raise this argument earlier, ICC cites no authority for the proposition that the Court is prohibited from considering the legally correct interpretation of a contract. Thus the Court exercises its discretion to consider the instant motion.

In short, MasterCard is not legally estopped from asserting as a defense on the eve of trial a new legal argument that is not an affirmative defense. *Cf. Arch Ins. Co. v. Precision Stone, Inc.*, 584 F.3d 33, 42 (2d Cir. 2009) (observing that affirmative defenses "must be set forth in the pleadings to provide a basis for relief"). ICC has cited no authority that supports -- or even permits -- the Court to bar a legal defense in these circumstances, particularly where the defense is meritorious as a matter of law, and is dispositive of the adverse party's claim.

MasterCard, however, could have -- and likely should have -- raised its argument regarding the interpretation of Rule 1.6.2 earlier in the proceeding. ICC may move for attorney

fees' or costs that it would not have incurred if the defense had been raised at an appropriate time.  Any such motion must cite the specific legal and factual bases for any requested relief.

### IV.   CONCLUSION

For the foregoing reasons, MasterCard's motion is GRANTED, and ICC's breach of contract claim is dismissed.

In light of the dismissal, by March 28, 2017, at 5:00 p.m., the parties must submit revised versions of (1) their respective statements of the case (i.e., the short summary to be included in the voir dire and preliminary charge) and (2) a revised witness list and exhibit list.   The parties shall advise the Court as soon as possible, and no later than March 25, 2016, whether any of the 5 exhibits submitted for an in limine ruling on admissibility is withdrawn in light of this Opinion.  In addition, each party's total time allotted for trial, not including closing argument, is reduced from eight (8) hours to six-and-a-half (6.5) hours.

The Clerk of Court is respectfully directed to close the motion at Docket Number 274.

Dated: March 24, 2017
       New York, New York

                               _____
                                     LORNA G. SCHOFIELD
                               UNITED STATES DISTRICT JUDGE