IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| INTERNATIONAL CARDS COMPANY, LTD., | ) ) ) ) |
| Plaintiff, | ) ) C.A. No. 13-CV-2576 (LGS) |
| v. | ) ) |
| MASTERCARD INTERNATIONAL INC., | ) ) |
| Defendant. | ) ) ) |

**REVISED JOINT FINAL PRETRIAL ORDER**

Pursuant to Individual Rule IV.B.1, and the Scheduling Order issued October 24, 2016 (D.E. 194), and Order issued March 16, 2017 (D.E. 272), the parties in the above-captioned action submit this proposed Joint Final Pretrial Order to the Court.

**A.   FULL CAPTION OF THE ACTION**

The full caption of this action is set forth above.

**B.   APPEARANCES**

The names, law firms, addresses, telephone numbers, and email addresses of trial counsel are as follows:

For Plaintiffs:

Fredric S. Newman
  fnewman@hnrklaw.com
Damian R. Cavaleri
  dcavaleri@hnrklaw.com
Ilene Jaroslaw
  ijaroslaw@hnrklaw.com
Jeffrey A. Miller
  jmiller@hnrklaw.com

1

Miriam J. Manber
  mmanber@hnrklaw.com

Hoguet Newman Regal & Kenney, LLP
10 East 40th St., 35th Floor
New York, NY 10016
Phone: (212) 689-8808
Fax: (212) 689-5101


For Defendants:

Jay N. Fastow
fastowj@ballardspahr.com
Denise L. Plunkett
plunkettd@ballardspahr.com
Justin W. Lamson
lamsonjw@ballardspahr.com
Alexander P. Kommatas
kommatasa@ballardspahr.com
Ballard Spahr LLP
919 Third Avenue, 37th Floor
New York, NY 10022
Phone: (212) 223-0200
Fax: (212) 223-1942

Thomas F. Burke
burket@ballardspahr.com
Thomas J. Gallagher IV
gallaghert@ballardspahr.com
Ballard Spahr LLP
1735 Market St
Philadelphia, PA 19103
Phone: (215) 665-8500
Fax: (215) 864-8999

Brooke E. Pietrzak
  brooke.pietrzak@mastercard.com
MasterCard International Incorporated
2000 Purchase Street
Purchase, NY 10577
Phone: (914) 249-1324

C.  **BASIS OF FEDERAL JURISDICTION**

This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332, as this is a civil action between diverse parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

International Cards Company, Ltd. ("ICC") is a limited liability financial services company organized under the laws of Jordan, with its principal place of business in Amman, Jordan.

MasterCard International Incorporated ("MasterCard") is a Delaware corporation, with its principal place of business in Purchase, New York.

D.  **SUMMARY OF CLAIMS AND DEFENSES**

1.  **ICC's Statement**

This is a civil case involving a dispute between two companies over credit-card services in the country of Jordan. One company is International ~~Card~~Cards Company, Ltd. -- which I will call ICC. The other company is MasterCard International Incorporated -- which I will call MasterCard.

You may hear the term "plaintiff" and "defendant." In this case, the plaintiff is ICC, and the defendant is MasterCard. The term "plaintiff" just means the party that first brought the lawsuit, and "defendant" means a person who was first sued. During your deliberations, you must not attach any significance to the terms "plaintiff" and "defendant" in weighing the evidence, especially in this case since both sides are suing each other.

**[Slide 2]** ICC was founded in 1999, and is located in Amman, Jordan. From 1999 to 2013, ICC had the right to act as an issuer and acquirer ~~on behalf~~ of MasterCard-branded credit card transactions in the country of Jordan. An issuer issues credit cards directly to consumers.

An acquirer contracts with merchants to acquire credit- card transactions that the merchant has accepted from consumers as payment for goods or services.

O~~I~~n April 1, 2013, MasterCard drew down on a letter of credit that ICC had provided as collateral to secure its payments.  The next day MasterCard terminated the parties' contractual relationship, which it had the right to do for any reason or no reason at all effective upon receipt of the notice of termination.~~, and drew down on a letter of credit that ICC had provided as collateral to secure its payments.~~  [Slide 3]

ICC claims that ~~the termination was wrongful and that~~ MasterCard ~~had no right to terminate ICC, and that MasterCard should~~did not have ~~drawn~~the right to draw down on ~~a~~the letter of credit ~~that ICC had established to secure its payments~~.  MasterCard denies any wrongdoing, and contends that it was entitled to ~~terminate its relationship with ICC because~~draw down on the letter of credit.  MasterCard also contends that ICC failed to pay its merchants on time ~~and~~, failed to provide information that MasterCard requested, and that ~~it was entitled to draw down on the letter of credit.  MasterCard also asserts that~~ ICC misused MasterCard trademarks and logos.  Both parties seek money damages from the other.

This is only a summary of the case, which I will review with you in more detail now.

   2.   **MasterCard's Statement**

This is a civil case involving a contract dispute between two companies over credit-card services in the country of Jordan.  One company is International ~~Card~~Cards Company, Ltd. -- which I will call ICC.  The other company is MasterCard International Incorporated -- which I will call MasterCard.

You may hear the term "plaintiff" and "defendant."  In this case, the plaintiff is ICC, and the defendant is MasterCard.  The term "plaintiff" just means the party that first brought the

lawsuit, and "defendant" means a person who was first sued.  During your deliberations, you must not attach any significance to the terms "plaintiff" and "defendant" in weighing the evidence, especially in this case since both sides are suing each other.

**[Slide 2]** ICC was founded in 1999, and is located in Amman, Jordan.  From 1999 to 2013, ICC had the right to act as an issuer and acquirer ~~on behalf~~ of MasterCard-branded credit card transactions in the country of Jordan.  An issuer issues credit cards directly to consumers.  An acquirer contracts with merchants to acquire credit card transactions that the merchant has accepted from consumers as payment for goods or services.

In April 2013, MasterCard terminated the parties' ~~relationship~~ contractual relationship, which it had the right to do, and drew down on a letter of credit that ICC had provided as collateral to secure its payments.  **[Slide 3]**

ICC claims that ~~the termination was wrongful and that~~ MasterCard ~~had no right to terminate ICC, and that MasterCard should~~ did not have ~~drawn~~ the right to draw down on ~~a~~ the letter of credit ~~that ICC had established to secure its payments~~.  MasterCard denies any wrongdoing, and contends that it was entitled to ~~terminate its relationship with ICC because~~ draw down on the letter of credit.  MasterCard also contends that ICC failed to pay its merchants on time ~~and~~, failed to provide information that MasterCard requested, and that ~~it was entitled to draw down on the letter of credit.  MasterCard also asserts that~~ ICC misused MasterCard trademarks and logos.  Both parties seek money damages from the other.

This is only a summary of the case, which I will review with you in more detail now.

E.   **TRIAL OF THE CASE**

A jury trial is scheduled in this matter to begin on April 3, 2017.

ICC estimates that the trial will take approximately 2 days.

ICC estimates it will need 7 hours for its case.  This estimate is based on the approximately 3 hours that ICC anticipates needing to conduct direct and redirect examination of its proposed witnesses, as listed below in Section G, and the amount of time that ICC believes it will need for cross-examination of MasterCard's witnesses, any rebuttal examination, and opening and closing statements.

MasterCard estimates it will need seven to eight hours for its case.  This estimate is based on the 5 hours that MasterCard anticipates needing to conduct direct and redirect examination of its proposed witnesses, as listed below in Section G, and the amount of time that MasterCard believes it will need for cross-examination of ICC's witnesses, any rebuttal examination, and opening and closing statements.

MasterCard demanded a jury trial.

F.   **CONSENT TO MAGISTRATE**

The parties do not consent to trial by a magistrate judge.

G.   **WITNESS LISTS:**

Plaintiff's Total Trial Time Estimate:

|  | **Time (in hours)** |
|---|---|
| Witness direct and redirect | 3 |
| Opening | .3 |
| Closing .7 |  |
| Anticipated Cross Examination and Counter Designations | 2 |
| Rebuttal 1 |  |
| **Total 7** |  |

Witnesses Plaintiff Intends To Call In Its Case In Chief:

| Witness Name | Manner of Appearance | Description of Testimony | Anticipated Length of ICC's Direct & Redirect Examination (in hours) |
|---|---|---|---|
| **Will Call** | | | |
| Khalil Alami | Live | ICC's business and history; ICC's collateral; ICC's operations, including its operations relating to merchant payment; ICC's contracts; ICC's impact on MasterCard's business in Jordan | 1.2 |
| Jenifer D'Souza | Live | ICC's collateral drawdown; MasterCard's alleged damages | .6 |
| Waleed Al Naser | Live | ICC's collateral drawdown; MasterCard's alleged damages | .4 |
| Basel El Tell | Live | ICC's collateral drawdown; MasterCard's alleged damages | .4 |
| Raghu Malhotra | Live | ICC's collateral drawdown; MasterCard's alleged damages | .4 |
| **Total Will Call Time** | | | **3 hours** |

Witnesses Plaintiff May Call If The Need Arises:

| Witness Name | Manner of Appearance | Description of Testimony | Anticipated Length of ICC's Direct & Redirect Examination (in hours) |
|---|---|---|---|
| **May Call** | | | |
| Shadi Abdelaziz (Rebuttal Only) | Live | ICC's operations, systems, and practices, including the OpenWay system; ICC's impact on MasterCard's business in Jordan | .5 |
| **Total May Call Time** | | | **.5 hours** |

Defendant's Total Trial Time Estimate:

The following chart contains MasterCard's current good faith lists of witnesses it will, and may, call at trial, respectively. The chart also includes (1) brief descriptions of each witness's expected testimony, and (2) an estimate of the amount of time MasterCard will need to question that witness, whether live or by designation. MasterCard has included certain witnesses that ICC has indicated it intends to call in its case-in-chief.

|  | Time (in hours) |
|---|---|
| Witness direct and redirect | 4.5-5.5 hours |
| Opening | 0.5 |
| Closing 1 |  |
| Anticipated Cross Examination and Counter Designations | 0.5 |
| Rebuttal 0.5 |  |
| **Total 7.0-8.0** |  |

| Witness Name | Description of Testimony | Time Estimate (Direct + Redirect) |
|---|---|---|
| **Will Call List** | | |
| Al Naser, Waleed | ICC's violations of MasterCard's rules, standards and agreements with ICC; harm to MasterCard | .75 |
| Creamer, Anthony | MasterCard's damages | .75 |
| El Tell, Basel | ICC's violations of MasterCard's rules, standards and agreements with ICC; collateral provided by ICC to MasterCard; harm to MasterCard | .75 |
| Gopal, Kaushik | The nature and operation of MasterCard's payment system; integrity of the MasterCard System; ICC's processing and payment systems and practices; the nature of the harm that ICC's failures caused to MasterCard. | .75 |

8

| Alami, Khalil | ICC's violations of MasterCard's rules, standards and agreements with ICC; ICC's possession of documents; ICC's failure to pay merchants on a timely basis or inability to timely pay its merchants due to, *inter alia*, ICC's financial condition; collateral provided by ICC to MasterCard; amounts owed to ICC merchants | 1.0 |
|---|---|---|
| **Total Will Call Time** | | **4.0** |
| **May Call List** | | |
| Malhotra, Raghu | ICC's violations of MasterCard's rules, standards and agreements with ICC; MasterCard's draw down on ICC's letter of credit; harm to MasterCard. | 0.5 |
| D'Souza, Jenifer | ICC's violations of MasterCard's rules, standards and agreements with ICC; MasterCard's Rules concerning collateral; collateral provided by ICC to MasterCard; MasterCard's draw down on ICC's letter of credit | 0.5 |
| Idris, Hani (By Deposition) | ICC's violations of MasterCard's rules, standards and agreements with ICC; harm to MasterCard | 0.25 |
| Pothen, Beena | ICC's violations of MasterCard's rules, standards and agreements with ICC | 0.25 |
| **Total May Call Time** | | **1.5** |

**H.     DEPOSITION DESIGNATIONS**

The Plaintiff's deposition designations, previously attached as Exhibit 1, have been removed based on MasterCard's commitment to make Jenifer D'Souza, Raghu Malhotra, and Waleed Al Naser available for live testimony. Defendant's deposition designations (including counter-designations and objections) is attached as Exhibit 2. The parties have agreed to defer providing final deposition designations to opposing counsel until at least 72 hours before their proffer. Counter-designations shall be provided within the next 24 hours. Each party reserves the right to use any of its affirmative designations as counter-designations, where appropriate, at trial. New designations or counter-designations may not be added without good cause.

I.      **PROPOSED EXHIBITS AND DEMONSTRATIVE AIDS**

The Plaintiff's and the Defendant's revised exhibit lists, accompanied by objections thereto, are attached as Exhibits 3 and 4, respectively.  The parties have stipulated that all exhibits produced by the parties are authentic.  Although these lists do not include the parties' demonstrative exhibits, compilations, or summaries, the lists include the sources for any such exhibits.  The parties have agreed to defer providing demonstrative aids, demonstrative exhibits, compilations, and summaries to opposing counsel no less than three trial days in advance of their anticipated use at trial.

J.      **WRITTEN DISCOVERY RESPONSES**

The Plaintiff's and the Defendant's admissions, interrogatory answers or other written discovery responses to be offered into evidence, accompanied by objections thereto, are attached as Exhibits 5 and 6, respectively.

K.      **LIST OF *IN LIMINE* MOTIONS:**

| Motion *in Limine* | ECF of Notice of Motion | Status | ECF No. of Order (if any) |
|---|---|---|---|
| ICC's Motion *in Limine* to Exclude Expert Testimony and Reports of Kaushik Gopal and Anthony Creamer | 153 Denied | | D.E. 227 |
| ICC's Motion *in Limine* to Preclude the Admission of Certain Evidence at Trial (Irrelevant and Prejudicial: Alami Receivables and Settlement Account) | 177, 179 | Alami Receivables – Granted in part, Denied in Part; Settlement Account – Denied | D.E. 273 |
| ICC's Motion *in Limine* to Preclude the Admission of Certain Evidence at Trial (2012 Merchant Satisfaction Survey) | 177, 180 | Granted | D.E. 273 |
| MasterCard's Motion *in Limine* to Exclude the Testimony and Report of Pamela O'Neill | 150 | Granted in part, Denied in part | D.E. 227 |

| Motion *in Limine* | ECF of Notice of Motion | Status | ECF No. of Order (if any) |
|---|---|---|---|
| MasterCard's Motion *in Limine* Number 1: MasterCard's Motive and Other Alleged "Bad Acts" | 181 | Granted in part, Denied in part | D.E. 273 |
| MasterCard's Motion *in Limine* Number 2: Notice and Cure Termination Provisions of License Agreements | 184 Granted | | D.E. 273 |
| MasterCard's Motion *in Limine* Number 3: After-Acquired Evidence | 186 Granted | | D.E. 273 |
| MasterCard's Motion *in Limine* Number 4: ICC Merchant Agreement Amendment | 188 | Denied as moot | D.E. 273 |
| MasterCard's Motion *in Limine* Number 5: Evidence Preclusion and Adverse Presumptions as Discovery Sanctions | 190 | Granted in part, Denied in part | D.E. 257 |
| MasterCard's Motion to Review The Magistrate Judge's October 5, 2016 Order | 202 | Denied as moot | D.E. 271 |
| ICC's Objection to Magistrate Judge Netburn's Ruling on MasterCard's Motion *in Limine* No. 5 | 265 Overruled | | D.E. 273 |

L.   **STIPULATION OF UNCONTESTED FACTS**

For use in this litigation and for no other purpose, the parties stipulate to the following uncontested facts:

1. Plaintiff International Cards Company, Limited, also referred to as ICC, is a public company based in Amman, Jordan.

2. ICC was established as a limited liability financial services company in 1999, and became a publicly held company in 2006. Its stock has traded on the Amman Stock Exchange under the symbol "CARD" since 2008.

3. Since 2006, Khalil Alami has been the Chief Executive Officer of ICC.

4. Defendant MasterCard International Incorporated is a Delaware corporation based in Purchase, New York.

5. MasterCard is a technology company in the payments industry, which connects consumers, financial institutions, merchants, governments and businesses worldwide.

6. MasterCard became a publicly held company in 2006. Its stock trades on the New York Stock Exchange.

7. MasterCard facilitates the processing of electronic payment transactions, including authorization, clearing and settlement of payment card transactions through an open network.

8. MasterCard offers payment solutions and services through several well-known brands, including MasterCard, MasterCard Electronic, Cirrus and Maestro.

9. MasterCard does not issue payment cards to cardholders, set terms relating to interest and fees charged to cardholders, or engage in collecting cardholder debts.

10. As used in this case, any references to "MasterCard cards" refers to MasterCard-branded payment cards.

11. MasterCard operates a payment network known as a "four-party system". The four parties in the MasterCard system are cardholders, merchants, issuers, and acquirers. This payment network is referred to as the MasterCard Network, the MasterCard System or the MasterCard Scheme.

12. A "cardholder" is a person who uses a MasterCard-branded payment card to obtain cash, or purchase goods or services from a merchant that accepts MasterCard-branded payment cards. A "payment card" is a credit card, debit card, or prepaid card.

13. An "issuer" is a financial institution or other authorized entity that issues MasterCard-branded payment cards to cardholders. An issuer extends credit to cardholders, determines the interest rates and other fees charged to cardholders, and sets most of the other terms of cardholders' payment card accounts. An issuer collects payments from cardholders, engages in collection efforts for delinquent accounts, and typically bears the credit risk associated with cardholders' payment card transactions.

14. Cardholders enter into contracts with issuers. They do not contract with MasterCard directly.

15. A "merchant" is a store or other business that may accept MasterCard-branded payment cards as payment for goods or services. The merchant sells these transactions to its acquirer at a discount in exchange for payment by the acquirer. The discount is often referred to as the "merchant discount fee."

16. An "acquirer" is a financial institution or other authorized entity that enters into contractual relationships with merchants to acquire MasterCard-branded payment card transactions. The acquirer provides a point-of-sale terminal or other facilities to each of its merchants, so that its merchants are able to enter into payment card transactions with cardholders. The merchant is entitled to receive payment for that transaction from the acquirer, subject to the terms of the merchant's agreement with its acquirer, minus the merchant discount fee agreed by the acquirer and merchant.

17. Merchants enter into contracts with acquirers. MasterCard does not acquire transactions from merchants.

18. MasterCard is not one of the four "parties" to a payment card transaction. MasterCard contracts with issuers and acquirers. Issuers and acquirers participating in the MasterCard network are referred to as MasterCard members or customers.

19. MasterCard's Rules define "Marks" as: "The names, logos, trade names, logotypes, trademarks, service marks, trade designations, and other designations, symbols, and marks, including but not limited to the MasterCard Brand Mark and the MasterCard Word Mark, that MasterCard and/or its affiliates of subsidiaries own, manage, license, or otherwise control and make available for use by Customers and other authorized entities. A Mark means any one of the Marks."

20. ICC acted as both an issuer of MasterCard-branded payment cards and an acquirer of MasterCard-branded payment card transactions.

21. Other MasterCard members include Bank of America, Citibank, and Capital One Bank, and many more.

22. MasterCard's Rules define "Activity" as: "The undertaking of any act that can be lawfully undertaken only pursuant to a License by the Corporation."

23. ICC had no right of exclusivity to conduct MasterCard Activity in any territory.

24. "Settlement" is the process by which by which issuers pay funds to acquirers.

25. From December 23, 1999 until April 2, 2013, ICC was granted a MasterCard Membership and related brand licenses, allowing it to issue MasterCard-branded payment cards, and to acquire MasterCard-branded payment card transactions from merchants.

26. ICC and MasterCard signed several license agreements, each of which incorporated MasterCard's rules and standards ("Rules") by reference. Together, MasterCard's Rules and license agreements comprised ICC's contract with MasterCard.

27.     New York law governs ICC's contract with MasterCard.

28.     ICC's standard forms of its merchant agreements provided that ICC "shall pay the total value of the valid sales receipts submitted for collection, when produced, after deducting and paying the agreed upon commission of (_)% and shall do so within (_) business days of the date of receipt." In almost all instances, the payment term was "within 5 business days of the date of receipt."

29.     ICC and its merchants together set the terms of the merchant agreements.

30.     ICC used a sophisticated and well-regarded transaction processing system from OpenWay to process card transactions and calculate daily settlement amounts due to merchants.

31.     ICC exported the daily settlement amounts to separate check-writing software.

32.     ICC did not have an automated accounts-payable reconciliation system to balance the amounts it owed to merchants with the amounts that it had paid to the merchants.

33.     ICC had no automated capability to prepare a report of the aging of its accounts payable to its merchants.

34.     The only method ICC had for trying to determine whether a particular merchant had received payment, for the MasterCard-branded transactions that ICC had acquired from that merchant was to manually search for and review ICC's paper check stubs, paper bank deposit slips, and any undelivered-checks made payable to the merchant, and then manually compare those paper records with the merchant's transaction history (the transactions acquired by ICC from that merchant) from ICC's OpenWay system.

35.     At all relevant times, the exchange rate is 1 Jordanian dinar equals 1.41 US dollars.

36.     On November 22, 2012, MasterCard sent ICC two Notices of Assessment.

37. The first Notice of Assessment levied an assessment of $5,000 for ICC's alleged Category B violation of Rule 5.2.4, which states that "Each Acquirer must pay each Merchant for all Transactions the Acquirer acquires from the Merchant in accordance with the Merchant Agreement and the Standards."

38. The second Notice of Assessment levied an assessment of $5,000 for ICC's alleged Category B violation of the Rules pertaining to the use of MasterCard's Marks.

39. Under the Rules, MasterCard could have assessed ICC up to $20,000 for its first Category B violation of each Rule, followed by up to $30,000 for a second violation and up to $60,000 for a third violation within 12 months, with subsequent violations within 12 months capable of being assessed at amounts of up to $100,000 per violation.

40. In January or February 2010, ICC provided to MasterCard as collateral a letter of credit of $1.72 million.

41. In February 2012, MasterCard notified ICC that it was required to provide additional collateral of approximately $2.78 million to MasterCard.

42. ICC posted the additional collateral in the form of a Standby Letter of Credit in the amount of $2.78 million.

43. On April 1, 2013, MasterCard drew down on ICC's Standby Letter of Credit in the full amount of $2.78 million.

44. On April 2, 2013, MasterCard sent a letter to ICC stating that ICC's "membership in MasterCard International Incorporated (MasterCard) and brand licenses for MasterCard and Maestro (and any other related licenses) have been terminated effective 2 April 2013 (Termination Date), as specified in the MasterCard Rule 1.6.2."

45. MasterCard did not draw down on the $1.72 million letter of credit.

46. The $2.78 million in collateral from the Standby Letter of Credit is being held in MasterCard's accounts.

47. ICC commenced this lawsuit on April 18, 2013, sixteen days after the termination of its MasterCard Membership and license agreements.

48. MasterCard asserted counterclaims against ICC for breach of contract on September 13, 2013.

### M. DAMAGES STATEMENT

ICC seeks damages of no less than $2.78 million, plus prejudgment interest at the statutory rate of 9% per year commencing on April 2, 2013, in the amount of roughly $1 million.

MasterCard disputes both ICC's entitlement to damages and ICC's calculation thereof. MasterCard seeks counterclaim damages for breach of contract of approximately $2.3 million to $2.7 million, which it will compute at trial, plus allowable interest.

### N. OTHER REQUESTED RELIEF

Pursuant to its Counterclaims (D.E. 15), MasterCard requests that this Court enjoin ICC from using MasterCard's Marks and from holding itself out as affiliated with MasterCard. MasterCard also requests that this Court enter an order declaring that MasterCard's April 1, 2013 drawing down on the letter of credit was proper, and awarding any such other further relief as the court deems appropriate, including allowing MasterCard to collect any counterclaim damages awarded from the collateral retained.

### O. UNANIMOUS VERDICT

Plaintiff consents to a less than unanimous verdict. Defendant does not consent to a less than unanimous verdict.

P.     **MISCELLANEOUS ISSUES TO BE ADDRESSED**

    1.     **ICC's Statement**

As a result of Your Honor's Opinion and Order dated March 24, 2017 (D.E. 287), ICC contends that MasterCard's breach of contract counterclaims fail as a matter of law. Rather than exercising an unconditional right to terminate, MasterCard elected to continue to receive the benefit of ICC's performance under the contract and accordingly elected to receive those benefits rather than seek damages for any alleged breach. A party cannot at the same time treat a contract as broken and as subsisting. One course of action excludes the other. *Inter-Power, Inc. v. Niagara Mohawk Power Corp.*, 259 A.D.2d 932, 934 (3d Dep't 1999) (citing *Strasbourger v. Leerburger*, 134 N.E. 834 (N.Y. 1922)); *see also ESPN, Inc. v. Office of the Comm'r of Baseball*, 76 F. Supp. 2d 383, 388 (S.D.N.Y. 1999). MasterCard's belated assertion of a unilateral right to terminate its contract with ICC gives rise to new defenses to MasterCard's counterclaims. Accordingly, ICC seeks leave to interpose an election of remedies affirmative defense and move to dismiss MasterCard's counterclaims as a matter of law.

Further, in accordance with the Court's Opinion and Order dated March 24, 2017 (D.E. 287), ICC is moving for an assessment of ICC's attorneys' fees and costs against MasterCard and its counsel.

Finally, in light of the Court's Opinion and Order dated March 24, 2017 (D.E. 287), MasterCard is not entitled to an adverse inference ruling regarding the timing of ICC's payments to merchants.

    2.     **MasterCard's Statement**

MasterCard anticipates raising the following issues at or before the final pre-trial conference:

- Witness order issues

- Anticipated objection regarding testimony of Khalil Alami

- Preclude as unfairly prejudicial argument that Mastercard "stole" ICC's money

- ICC's newly asserted affirmative defense

- References to the availability and amount of prejudgment interest by the parties or experts

- Inclusion of general instruction on time limit in preliminary jury instructions

- If the identification of exhibits at the end of each trial day for the following includes exhibits to be introduced on cross-examination

- Mechanism for entering pre-admitted exhibits into the record

- Content of Jury Notebooks

- Reading of stipulated facts before openings

Dated: March 28, 2017                                Respectfully submitted,

/s/ Fredric S. Newman                                /s/ Denise Plunkett
Fredric S. Newman                                    Denise L. Plunkett, Esq.
fnewman@hnrklaw.com          PlunkettD@BallardSpahr.com
Hoguet Newman Regal & Kenney LLP                     Ballard Spahr LLP
10 East 40th Street, 35th Floor                      919 Third Avenue, 37th Floor
New York, NY 10016                                   New York, NY 10022
Telephone: (212) 689-8808                            Telephone: (212) 223-0200
Facsimile: (212) 689-5101                            Facsimile: (212) 223-1942

*Attorney for Plaintiff*                             *Attorney for Defendant*
*International Cards Company, Ltd.*                  *MasterCard International Incorporated*