UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| INTERNATIONAL CARDS COMPANY, LTD., | ) ) ) | |
| Plaintiff, | ) ) | C.A. No. 13-CV-2576 (LGS) (SN) |
| v. | ) ) ) | |
| MASTERCARD INTERNATIONAL INC., | ) ) | |
| Defendant. | ) ) | |

**PLAINTIFF INTERNATIONAL CARDS COMPANY'S
MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION FOR ATTORNEY'S FEES AND COSTS**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................................................... ii

RELEVANT FACTS ..................................................................................................................... 2

POLICY AND ETHICS ................................................................................................................. 8

ARGUMENT .................................................................................................................................. 8

    I.    SANCTIONS ARE APPROPRIATE UNDER THE COURT'S INHERENT POWER EVEN WITHOUT A FINDING OF BAD FAITH. ................................................................................................................. 8

    II.    SANCTIONS ARE APPROPRIATE UNDER THE COURT'S INHERENT POWER AND 28 U.S.C. § 1927 FOR THE BAD FAITH CONDUCT OF MASTERCARD AND ITS LAWYERS. ..................................... 11

CONCLUSION ............................................................................................................................ 13

# **TABLE OF AUTHORITIES**

**Cases**

*Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991) ............................................................................ 12

*Handschu v. Police Dep't of the City of New York*,
679 F. Supp. 2d 488 (S.D.N.Y. 2010) ................................................................................... 10, 11

*TransformaCon Inc. v. Vista Equity Partners, Inc.*,
No. 15 Civ. 3371, 2015 U.S. Dist. LEXIS 94896 (S.D.N.Y. July 21, 2015) ................................ 3

*United States v. Seltzer*, 227 F.3d 36 (2d Cir. 2000) .................................................................... 10

**Statutes**

28 U.S.C. § 1927 ............................................................................................................................ 12

**Other**

Fed. R. Civ. P. 1 ............................................................................................................................... 2

Plaintiff International Cards Company, Ltd. ("ICC") respectfully submits this motion seeking the attorneys' fees and costs arising out of Defendant MasterCard International Inc.'s ("MasterCard") failure to move to dismiss ICC's breach of contract claim prior to the eve of trial, as invited by the Court in its Opinion and Order entered March 24, 2017. (D.E. 287)

Following four years of litigation and millions of dollars in unnecessary fees and expenses on both sides, the parties and the court system are all losers.

MasterCard and its counsel must have known about their winning argument from day one. The relevant section of MasterCard's Rules, Rule 1.6.2, is expressly cited in MasterCard's termination letter of April 2, 2013. Certainly, as implied by the Court, MasterCard should have asserted it early in one of the many available opportunities in 2013. Instead, MasterCard deployed improper "scorched earth" litigation tactics while holding an ultimately successful argument in its back pocket. MasterCard could have raised the argument in a motion to dismiss as early as *October 2013*, but delayed filing that motion until *March 2017*, well over three years later, in violation of the mandate of the Federal Rule of Civil Procedure "to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.

Indeed, in its preliminary case management Order of June 7, 2013, D.E. 9, this Court specifically called upon the parties to identify "principal claims and defenses, and the major legal and factual issues that are most important to resolving the case, whether by trial, settlement or dispositive motion". Surely MasterCard must have considered the applicability of Rule 1.6.2 at that time.

As the Court highlighted in its March 24th Order (D.E. 287), MasterCard's years-long delay in raising its contractual interpretation argument caused ICC to incur substantial legal fees and costs. During the nearly four years of litigation between the parties, ICC incurred millions

of dollars in litigation expenses that could have been avoided if MasterCard had filed a motion to dismiss in a timely fashion. Instead, MasterCard demanded massive discovery, filed multiple summary judgment motions, and made extensive pretrial motions, all costly to ICC and all now rendered irrelevant. Because MasterCard and its counsel bear full responsibility for this unexplained and unjustified delay, equity demands that MasterCard, not ICC, should bear the cost of the delay, in the form of ICC's legal fees and expenses for the work that could have been avoided if MasterCard had made its dispositive motion in 2013 instead of 2017.

## **RELEVANT FACTS**

At the Final Pretrial Conference held on March 15, 2017, MasterCard sought leave from the Court to make its third motion for summary judgment on an expedited basis. *See* Declaration of Damian R. Cavaleri, dated March 29, 2017 ("Cavaleri Decl."), Exhibit 1 (Transcript of Conference) at 5-11. The motion came nearly four years and more than 275 docket entries after ICC filed its initial complaint in this action against MasterCard, while ICC and the Court were in the midst of final trial preparation. *See* Cavaleri Decl., Ex. 2 (Docket Sheet).

MasterCard's third motion for summary judgment was essentially a motion to dismiss ICC's primary cause of action, which accounted for more than 95% of the damages ICC claimed in its initial complaint. MasterCard's argument—that the language of Rule 1.6.2 unambiguously conferred upon it an unconditional right of termination—is an issue of law which could have, and should have, been raised as a Rule 12(b)(6) motion to dismiss as early as October 2013. *See TransformaCon Inc. v. Vista Equity Partners, Inc.*, No. 15 Civ. 3371, 2015 U.S. Dist. LEXIS 94896 (S.D.N.Y. July 21, 2015) (granting Rule 12(b)(6) motion to dismiss based on unambiguous unconditional termination clause).

ICC made numerous requests prior to and throughout nearly four years of discovery concerning MasterCard's basis for terminating ICC, but until March 15, 2017, MasterCard had never made the argument proffered in its recent motion – namely, that Rule 1.6.2 conferred an unambiguous, unconditional right of termination.

MasterCard bears particular blame for failing to raise Rule 1.6.2 as a defense in 2013. After all, MasterCard wrote its own Membership Rules. Rule 1.6.2 is MasterCard's own creation, and it is inconceivable that it was not thoroughly vetted within MasterCard, both by lawyers and by executives, before it was included in the Membership Rules. MasterCard knew about Rule 1.6.2 from the time it first entered into a contract with ICC, long before this litigation began. And, of course, MasterCard cited Rule 1.6.2 as the basis for terminating ICC's Membership on April 2, 2013. Cavaleri Decl., Ex. 9.

Moreover, MasterCard itself was an integral part of the legal team defending against ICC's suit. As this Court has seen, MasterCard embedded in-house counsel in its litigation team from the outset: in-house counsel attended all court appearances and nearly all depositions, and MasterCard intends for in-house counsel to sit at counsel table at trial although MasterCard will have another person, Mr. El Tel, as its corporate representative. Cavaleri Decl., Ex. 1 at 13:14-15. MasterCard could and should have raised its apparent "ace-in-the-hole" argument long ago.

MasterCard should have raised the Rule 1.6.2 argument on *at least* nine separate occasions earlier in the lawsuit:

1. June 5, 2013 – MasterCard failed to assert right of unconditional termination or intent to dismiss ICC's breach of contract claim in pre-motion letter responding to ICC's Complaint. Cavaleri Decl., Ex. 3 (June 5, 2013 Pre-Motion Letter).

3

2. July 26, 2013 – MasterCard failed to include right of unconditional termination or intent to dismiss ICC's breach of contract claim in pre-motion letter responding to ICC's Amended Complaint. Cavaleri Decl., Ex. 4.(June 26, 2013 Pre-Motion Letter).

3. August 19, 2013 – Based on exchange of pre-motion letters, parties conferred and reached stipulated agreement (D.E. 13) stating that, in lieu of 12(b)(6) motion practice, ICC would waive certain claims that MasterCard sought to dismiss from the action. MasterCard never mentioned unconditional right to terminate.

4. September 13, 2013 – MasterCard failed to include right of unconditional termination in its Answer and Counterclaims (D.E. 15).

5. October 9, 2013 – MasterCard failed to include right of unconditional termination in joint letter to Court (D.E. 17) responding to this Court's Order instructing the parties to submit their "principal claims and defenses, and the major legal and factual issues _that are most important to resolving the case_, whether by trial, settlement or dispositive motion" (emphasis added) (D.E. 9).

6. January 30, 2014 – The parties filed a joint status report (D.E. 23) in which ICC asked a Magistrate Judge to facilitate settlement discussions early in the case, while MasterCard indicated that it was not open to further discussions until the conclusion of fact discovery. MasterCard did not mention its unconditional right to terminate.

7. September 9, 2015 – MasterCard moved for summary judgment without arguing or suggesting that it had an unconditional right to terminate ICC's MasterCard membership. (D.E. 123).

4

8. June 9, 2016 – MasterCard moved for reconsideration of the denial of its summary judgment motion, but MasterCard did not argue or suggest that it had an unconditional right to terminate ICC's MasterCard membership. (D.E. 143).

9. June 30, 2016 – MasterCard again moved for summary judgment but did not argue or suggest that it had an unconditional right to terminate ICC's MasterCard membership. (D.E. 148).

In each of the above instances, MasterCard had an opportunity to assert its unconditional right of termination under Rule 1.6.2, and in each of the above instances MasterCard failed to do so. Moreover, ICC repeatedly represented that it was litigating one main issue—the basis for its termination—which on the eve of trial MasterCard successfully argued was irrelevant to the case. At no prior point had MasterCard made such an argument. Not at the conference before Judge Netburn on February 27, 2014, when counsel for ICC stated "our goal has always been to try to figure out why and how it came to be that ICC was terminated in the way it was terminated." (D.E. 40, at 30:16-18). Not in the joint status report on June 2, 2014, when ICC stated, "There is one main factual issue: the basis for MasterCard's abrupt termination of ICC's licenses after 13 years of highly successful performance." (D.E. 44 (detailing discovery burden imposed by MasterCard in driving up cost to ICC for seeking this information)). Instead of arguing its interpretation of Rule 1.6.2's provisions, MasterCard filed misleading court papers and offered witnesses who provided misleading testimony. *See, e.g.,* Cavaleri Decl. Ex. 5 (MasterCard's Interrogatory Response); Cavaleri Decl. Ex. 6 (MasterCard executive Stephen Ruch Deposition Tr. at 176:7-177:6, 184:5-185:5).

Had MasterCard proffered its eve-of-trial interpretation of its own Rules in a timely fashion, at the beginning of the case, MasterCard would have provided ICC with a fair

opportunity to assess the case, to respond to MasterCard's contract interpretation, to marshal contrary evidence, and to adjust ICC's litigation strategy. ICC would also have had the opportunity to seek proportionate discovery (rather than needing to satisfy the wide-ranging demands that MasterCard justified by arguing that it needed to measure the damages that ICC was claiming based on its breach of contract count).

Now, after four years of needless litigation, MasterCard has caused ICC to incur millions of dollars in fees and expenses responding to MasterCard's litigation tactics. Nearly every penny ICC has expended since October 2013 has been spent solely because MasterCard's counsel failed to identify MasterCard's interpretation of its own Rule 1.6.2 until March 15, 2017, less than three weeks before trial.

During those 46 months, ICC produced more than 110,000 documents and 550,000 Bates-stamped pages, many of which are completely irrelevant based on the March 24th decision, in response to wide-ranging, unnecessary document demands (e.g. "All Documents and Communications concerning ICC's finances and financial structure, including without limitation ICC's sources of funding, financial condition, revenues, expenses, costs, profits, cash flow, capital, loans, liens, collateral, lines of credit, equity, debt, financings, accounts receivable, accounts payable, investments, bank accounts, and bank statements." Cavaleri Decl., Ex. 7 (MasterCard's First Request for the Production of Documents, dated November 15, 2013) at ¶ 11). ICC participated in over 20 depositions totaling approximately 125 hours of deposition testimony, most of which required international travel by the deponent; filed dozens of oppositions to motions and letters to the Court; and responded to 60 pages of Requests for Admission including 198 distinct requests with a total of more than 500 subparts. Most, if not all,

of that document production, deposition testimony, admissions discovery, and motion practice would have been avoided had MasterCard asserted its contract interpretation in a timely fashion.

In reliance on MasterCard's position and representations throughout this litigation up until March 15, 2017, ICC incurred $4,103,341 in attorneys' fees and $560,990.38 in expenses. *See* Declaration of Fredric S. Newman, dated March 29, 2017, ¶¶ 10, 12. The fees and expenses are calculated from October 9, 2013, the latest date upon which MasterCard should have moved to dismiss the complaint or informed the Court of its position that MasterCard had an unconditional right to terminate ICC's MasterCard membership pursuant to Rule 1.6.2. MasterCard could have done either in October 2013.

MasterCard's conduct also wasted this Court's resources. First, it ignored the express requirement of this Court's June 7, 2013 Order. It was obligated to identify principal defenses "that are most important to resolving the case" (D.E. 9).

Next, MasterCard has filed more than a dozen motions (not including letter-motions) since the inception of the case four years ago, all of which required substantial Court time to adjudicate. The parties have appeared for Court conferences at least 18 times since October 2013, including three lengthy mediation sessions before Judge Netburn. And while still relying on the ground for termination that MasterCard asserted as a defense for nearly four years (ICC's alleged deficiencies in payments to merchants), MasterCard served a trial subpoena on non-party Leen Alami that required court attention.

**POLICY AND ETHICS**

In support of this motion, ICC consulted with New York's leading expert in the field of legal ethics and professional responsibility, Professor Roy Simon. He opines in his accompanying Declaration:

> 22. In my professional opinion, MasterCard and its lawyers bear full and joint responsibility for waiting until the eve of trial to assert MasterCard's successful argument, and they thus bear full and joint responsibility for causing ICC to incur attorney fees and expenses related to ICC's breach of contract claims for nearly four years after those claims should have been resolved. It would be inequitable for ICC, which is blameless, to bear the burden of attorney fees and costs that MasterCard and its lawyers could and should have avoided by making a timely motion to dismiss based on MasterCard's unambiguous and unconditional right to terminate ICC's Membership pursuant to Rule 1.6.2.
>
> 23. The Court has inherent power to remedy the injustice suffered by ICC. All federal courts have inherent power to manage their own proceedings and to supervise the attorneys and parties who appear before them. This situation cries out for the Court to employ its inherent power to right a serious wrong and to advance the policy of administering justice in a speedy, efficient, and cost-effective manner.
>
> 36. The most appropriate and effective remedy for such litigation abuse, in my opinion, is the robust exercise of the Court's inherent power to do equity. The Court has power to do equity whether or not the large company and its lawyers have acted in bad faith. Even if they have acted in good faith but have been negligent or reckless in waiting until the eve of trial to make a dispositive motion, the smaller adversary has spent the same unnecessary dollars and suffered the same unjustified harm. If the small company is blameless, then the Court can and should use its inherent power to make things right to the extent possible.

**ARGUMENT**

### III. SANCTIONS ARE APPROPRIATE UNDER THE COURT'S INHERENT POWER EVEN WITHOUT A FINDING OF BAD FAITH.

MasterCard's delay in asserting its dispositive motion was either intentional or grossly negligent. In either case ICC is blameless. The Court has the inherent power to sanction inappropriate conduct even in the absence of a finding of bad faith where an attorney's "misconduct . . . is not undertaken for the client's benefit," and "interferes with the court's power

8

to manage its calendar and courtroom." *United States v. Seltzer*, 227 F.3d 36, 42 (2d Cir. 2000). Here, the lawyers representing MasterCard caused it to incur legal fees far in excess of what was reasonable. *See* N.Y. Rule of Prof'l Cond. 1.5(a) (listing factors for determining whether a fee is excessive). Indeed, both MasterCard and ICC have each incurred more in fees and expenses than the amount that now remains in controversy. Unless MasterCard was using the legal system in bad faith for improper purposes, MasterCard derived no benefit from this prolonged litigation over claims which this Court opined should have been resolved through a motion to dismiss in 2013. Plainly, MasterCard would have been better served by filing a motion to dismiss at the outset of this litigation based on its own interpretation that its own Rule 1.6.2 provided for unconditional termination. Outside counsel and MasterCard's in-house member of the trial team were, at a minimum, grossly negligent in litigating this matter. This Court has authority to sanction their conduct under its inherent power to provide equitable relief to ICC.

There is precedent in this district for imposing sanctions when a defendant's negligent or reckless failure prolongs litigation and causes a plaintiff to incur needless fees and expenses. In *Handschu v. Police Dep't of the City of New York*, 679 F. Supp. 2d 488, 503-04 (S.D.N.Y. 2010), the Court sanctioned Corporation Counsel for continuing to litigate the validity of an internal NYPD guideline which, unbeknownst to the plaintiffs and the Court, was no longer in effect. The Court said:

> In the case at bar, it cannot be said that Corporation Counsel's conduct in failing to advise Class Counsel and the Court of the rescission of Interim Order 47 was "undertaken for the client's benefit." Corporation Counsel's client, the NYPD, and the taxpayers who fund it ***derived no benefit*** from Corporation Counsel continuing to litigate the validity and implementation of an Interim Order which had ceased to exist 17 months before.

679 F. Supp. 2d at 503-04 (emphasis added). The Court reasoned that "Corporation Counsel's indulgence in meaningless litigation imposed a cost on their client, [but] it did not confer a

9

profit." Compounding the problem, Corporation Counsel had abdicated its responsibility as an officer of the court "to notify opposing counsel and [the] Court of a change of material facts." Exercising its inherent powers, the *Handschu* Court required Corporation Counsel to pay the plaintiffs' legal fees and expenses "to the extent that such fees and expenses would not have been incurred" absent Corporation Counsel's "neglect or reckless failure." *Id.* at 504.

Here, MasterCard – acting through Ballard Spahr and trial counsel from MasterCard's in-house legal department – needlessly expanded and prolonged this litigation and abdicated its professional responsibility to bring material facts to the attention of the Court and the opposing party. MasterCard's inside and outside lawyers "imposed a cost on their client" by engaging in "meaningless litigation" for almost four years. All of this could have been avoided if MasterCard had instead moved to dismiss on the basis of what they have strenuously argued to this Court was an *unambiguous* contract term written by MasterCard itself.

There is no need for this Court to find bad faith here, because the attorneys' conduct was "not undertaken for the client's benefit." Their gross negligence in failing to raise this argument at the outset of this case wasted the time and resources of their client, ICC, and this Court. The appropriate and equitable remedy is to award ICC all of the attorneys' fees and expenses that ICC would not have incurred but for MasterCard's counsel's gross negligence. Those fees and expenses constitute the overwhelming majority of fees and expenses incurred by ICC throughout this litigation. Had ICC's primary claim been dismissed in the fall of 2013, the entire litigation would have proceeded differently and might have been settled years ago, saving time and expense for ICC, MasterCard, and the Court. ICC should not have to bear millions of dollars in attorneys' fees and litigation expenses because of MasterCard's unjustifiable and unexplained delay in interpreting its own contract language.

**IV.  SANCTIONS ARE APPROPRIATE UNDER THE COURT'S INHERENT POWER AND 28 U.S.C. § 1927 FOR THE BAD FAITH CONDUCT OF MASTERCARD AND ITS LAWYERS.**

Sophisticated clients set the tone for the style of litigation they wish their lawyers to pursue.  Declaration of Roy D. Simon, Jr., dated March 29, 2017, ¶ 34.  MasterCard is not only a sophisticated client, but also embedded in-house counsel in the litigation team for maximum client involvement.  MasterCard's conduct in the case may have been negligent or reckless, but it also may well have been rational and intentional, designed to inflict expenses on ICC and send a bullying message to others who might dare to litigate against MasterCard. *Id.* ¶¶ 31-33.  From the course of events in this litigation, the Court can reasonably infer the bad faith of MasterCard and its lawyers, as discussed below.

To the extent MasterCard did get a benefit by dragging out the case, it was an improper one: it used the justice system to inflict needless litigation costs on a less powerful party that dared to challenge MasterCard's abrupt and unexplained cancellation of its contract.  MasterCard has a nearly unlimited litigation budget; it allocated in excess of $1.4 *billion* to litigation for the last two years in its most recent 10-K filing with the Securities and Exchange Commission. *See* Cavaleri Decl., Ex. 8.  MasterCard's decision to forgo an early Rule 12(b)(6) motion and its decision to move for summary judgment on the eve of trial are strategic decisions consistent with bad faith.  Accordingly, the Court may use its inherent power to tailor a sanction which serves a "dual purpose" of (i) "vindicating judicial authority" to deter improper conduct, especially (though not exclusively) if the conduct was in bad faith, and (ii) making a party whole for "expenses caused by his opponent's obstinacy." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991) (citation omitted); *see also* Simon Decl. ¶ 20.

The Court may also award fees to ICC based on 28 U.S.C. § 1927, which provides that an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be

11

required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." The text of § 1927 describes exactly what apparently happened here: MasterCard's failure to raise an argument available to it from the very beginning "unreasonably and vexatiously" multiplied these proceedings.  In light of in-house counsel's full participation in litigation decisions as an integral member of MasterCard's litigation team, the Court should impose joint and several liability on MasterCard's Office of General Counsel as well as Ballard Spahr.

In sum, MasterCard's winning motion for summary judgment was available from day one but not filed until less than three weeks before trial. MasterCard's extreme delay in raising its dispositive argument is especially egregious because the argument was based on MasterCard's own Membership Rules, which MasterCard *wrote*.  MasterCard cannot justify its nearly four-year delay in advancing its "unambiguous" contract interpretation argument.  Even if this prolonged delay resulted from gross negligence or reckless failure by MasterCard and its counsel, this Court has inherent power to impose sanctions so that the innocent party, ICC, does not suffer millions of dollars of needless harm.

Sanctions are even more equitable, and should be even more severe, if the four-year delay by MasterCard and its lawyers was intentional or in bad faith. That may well be the case. A fair inference, based on the conduct of MasterCard and its counsel, is that MasterCard wanted to make an example out of ICC. MasterCard wanted other small-business licensees to hear them, loud and clear: "If you challenge MasterCard, you will pay a heavy price, because MasterCard will engage in excessive, expensive, and harassing litigation."  This vexatious approach to this litigation is an abuse of the Court and of the United States judicial system, and MasterCard's and its counsel's improper actions should be sanctioned, not condoned, by this Court.

## **CONCLUSION**

For the foregoing reasons, it is respectfully requested that the Court sanction MasterCard and its counsel Ballard Spahr in an amount equal to the attorneys' fees and expenses incurred by ICC as a result of MasterCard's failure to timely move to dismiss ICC's breach of contract claim.

Dated: New York, New York
March 29, 2017

HOGUET NEWMAN
REGAL & KENNEY, LLP

_____

Fredric S. Newman, Esq.
 fnewman@hnrklaw.com
Damian R. Cavaleri, Esq.
 dcavaleri@hnrklaw.com
Ilene Jaroslaw, Esq.
 ijaroslaw@hnrklaw.com
Jeffrey A. Miller, Esq.
 jmiller@hnrklaw.com
Miriam Manber, Esq.
 mmanber@hnrklaw.com

10 East 40th Street
New York, NY 10016
Telephone: (212) 689-8808

*Attorneys for Plaintiff International Cards Company, Ltd.*