UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
                                                             :
INTERNATIONAL CARDS COMPANY, LTD.,                           :
                                          Plaintiff,         :
                                                             :          13 Civ. 2576 (LGS)
                     -against-                                :
                                                             :          **OPINION AND ORDER**
MASTERCARD INTERNATIONAL INC.,                               :
                                          Defendant.         :
------------------------------------------------------------ X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__08/21/17___

LORNA G. SCHOFIELD, District Judge:

A jury found for Plaintiff International Cards Company, Ltd. ("ICC") on its conversion

claim against Defendant MasterCard International Inc. ("MasterCard") and awarded ICC $2.78

million in damages. MasterCard moves for judgment as a matter of law under Federal Rule of

Civil Procedure 50(b) on ICC's claim. For the following reasons, the motion is denied.

I.      **BACKGROUND**

        A.      **Factual Background**

        Familiarity with the allegations and procedural history is assumed. *See Int'l Cards Co. v.*

*MasterCard Int'l Inc.*, No. 13 Civ. 2576, 2016 WL 3039891, at *1–3 (S.D.N.Y. May 26, 2016).

The facts below are taken from undisputed evidence presented at trial.

        ICC is a financial services company based in Jordan. MasterCard is a technology

company that maintains a payment network to facilitate the processing of debit and credit card

payment transactions. MasterCard's payment network is based on the "four-party system." The

four parties are: (1) cardholders that use MasterCard-branded cards to purchase goods or

services; (2) merchants that accept MasterCard-branded cards as payment for goods or services;

(3) issuers, the financial institutions that issue the MasterCard-branded payment cards to

cardholders; and (4) acquirers, the financial institutions that contract with merchants to acquire

the payment-card transactions.  Cardholders pay issuers for their payment card transactions.

Acquirers pay merchants for the cardholder purchases in exchange for a fee.  From December

23, 1999, until April 2, 2013, MasterCard granted ICC a Membership in MasterCard's payment

network and related brand licenses that allowed ICC to act as both an issuer and acquirer.  In

exchange, ICC paid MasterCard an annual licensing fee and other fees.

In its capacity as an acquirer, ICC's standard agreement with merchants provides that

ICC "shall pay [merchants] the total value of the valid sales receipts submitted for collection,

when produced, after deducting and paying the agreed upon commission of (_)% and shall do so

within (_) business days of the date of receipt."  In almost all instances, ICC's merchant

agreements state that the payment term is "within five business days of the date of receipt."

In 2010, ICC provided MasterCard with collateral in the form of a letter of credit for

$1.72 million.  In February 2012, MasterCard required ICC to provide additional collateral of

approximately $2.78 million.  According to MasterCard's February 2012 notification to ICC, the

additional collateral was needed to cover "ICC's estimated MasterCard settlement exposure" of

$4.5 million.  Settlement is the process by which an issuer pays funds to acquirers, or by which

an acquirer, like ICC, pays funds to merchants.

ICC posted the additional collateral in the form of a Standby Letter of Credit in the

amount of $2.78 million (the "Letter of Credit").  The Letter of Credit permits MasterCard to

"demand payment" for any amount that "represent[s] funds either (i) paid by . . . MasterCard . . .

to MasterCard . . . Merchants, or (ii) due and payable to MasterCard . . . Merchants."  It states

that "partial drawings are permitted."

On March 28, 2013, MasterCard employees exchanged emails regarding drawing down

on the Letter of Credit on April 1, 2013, "in advance of officially terminating [ICC's] licenses[.]"

MasterCard employee Dharma Bajpai wrote that MasterCard has "evidence of [ICC's] non[-]payment to merchants, currently and in the past." Another MasterCard employee, Ian Webb, replied, "We have until the middle of the month to draw on the [Letter of Credit]. We could wait until after the termination notice and decide after seeing post-termination behavior. Grounds for drawing may be more robust then." Bajpai responded in part:

> There may be claims against [M]aster[C]ard and[/or] we may decide to make some or all merchants whole. Having cash on hand and potentially returning it if not used is a better course of action I feel . . . . We do not know the extent of merchant non[-]payment. Onl[y] when we have drawn will we have leverage for [I]CC to open up its books and conduct some form of audit. Again if we want to.

On April 1, 2013, MasterCard drew down on the Letter of Credit in the full amount of $2.78 million. MasterCard's drawing statement, signed by Webb, states that the $2.78 million "represent[s] funds either (i) paid by . . . MasterCard . . . to MasterCard . . . Merchants, or (ii) [d]ue and payable to MasterCard . . . Merchants." MasterCard did not pay, either before or after the drawdown, any funds owed by ICC to any merchants, nor did MasterCard return any of the funds to ICC until more than four years later, after the jury verdict. MasterCard did not draw down on the $1.72 million letter of credit, which also provides that MasterCard could draw down for funds paid by MasterCard to merchants or due and payable to merchants.

On April 2, 2013, MasterCard sent a letter to ICC terminating ICC's Membership in MasterCard's network and related licenses effective as of that date. The letter provides that "[d]espite MasterCard's notice, ICC has continued to delay payments to [m]erchants for transactions ICC acquired from those [m]erchants."

### B. Procedural History

On April 18, 2013, ICC sued MasterCard asserting six causes of action. Count Three, the only surviving claim at the time of trial, alleges conversion under New York law based on the

$2.78 million drawdown on the Letter of Credit.  MasterCard asserted three counterclaims -- two claims for breach of contract and one claim for a declaratory judgment that MasterCard had a right to draw down on the Letter of Credit.

On April 3, 2017, a six-day jury trial commenced on ICC's conversion claim and MasterCard's contract counterclaims.  The parties agreed before trial that judgment should be entered on MasterCard's declaratory judgment counterclaim in a manner consistent with the jury's finding on ICC's conversion claim.  The jury found for ICC on the conversion claim and awarded ICC $2.78 million, in effect reversing MasterCard's drawdown on the letter of credit.  The jury found for MasterCard on one of the two contract claims, concluding that ICC had breached its contract with MasterCard "by failing to pay merchants on a timely basis or by failing to provide information MasterCard requested."  The jury awarded no damages to MasterCard.  On April 24, 2017, MasterCard returned $2.78 million to ICC.

## II.    STANDARD

Judgment as a matter of law is appropriate "only if the court, viewing the evidence in the light most favorable to the non-movant, concludes that a reasonable juror would have been *compelled* to accept the view of the moving party."  *MacDermid Printing Sols. LLC v. Cortron Corp.*, 833 F.3d 172, 180 (2d Cir. 2016) (internal quotation marks omitted).  "The court cannot assess the weight of conflicting evidence, pass on the credibility of witnesses, or substitute its judgment for that of the jury."  *Wiercinski v. Mangia 57, Inc.*, 787 F.3d 106, 113 (2d Cir. 2015) (internal quotation marks omitted).  A Rule 50 motion may be granted only if "there exists such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or the evidence in favor of the movant is so overwhelming that reasonable and fair minded [persons] could not arrive at a verdict against

4

[it]."  *Warren v. Pataki*, 823 F.3d 125, 139 (2d Cir. 2016) (internal quotation marks omitted), *cert. denied sub nom. Brooks v. Pataki*, 137 S. Ct. 380 (2016).

## III.  DISCUSSION

MasterCard argues that no reasonable jury could have found in favor of ICC on the conversion claim.  This argument is rejected.

"A conversion takes place when someone, intentionally and without authority, assumes or exercises control over personal property belonging to someone else, interfering with that person's right of possession."  *Colavito v. N.Y. Organ Donor Network, Inc.*, 860 N.E.2d 713, 717 (N.Y. 2006).  In certain circumstances, a defendant commits conversion if she obtains possession by making a knowingly false statement.  *See, e.g.*, *Hyosung Am., Inc. v. Sumagh Textile Co.*, 25 F. Supp. 2d 376, 384 (S.D.N.Y. 1998) (applying New York law; "letter of credit applicant may state a claim for conversion against party drawing down letter of credit using fraudulent documents . . . ." (citing *Emery-Waterhouse Co. v. R.I. Hosp. Tr. Nat'l Bank*, 757 F.2d 399, 406 (1st Cir. 1985) (Breyer, J.))), *aff'd*, 189 F.3d 461 (2d Cir. 1999); *City of Amsterdam v. Daniel Goldreyer, Ltd.*, 882 F. Supp. 1273, 1280 (E.D.N.Y. 1995) (applying New York law; "the commission of fraud may also be sufficient interference to support a claim of conversion"); *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Arcturus Builders Inc.*, 552 N.Y.S.2d 287, 288 (1st Dep't 1990) (conversion claim based on the defendants' withdrawing funds from a bank to which the defendants were not entitled); 23 N.Y. Jur. 2d Conversion, Etc. § 22 (2d ed., May 2017 update) ("A defendant who obtains possession of property under a false representation and who retains the property is liable for conversion conducted with a clear intent designed to victimize the owner."); *see generally Connaughton v. Chipotle Mexican Grill, Inc.*, 29 N.Y.3d 137, 142 (N.Y. 2017) ("To allege a cause of action based on fraud, plaintiff must assert a

misrepresentation or a material omission of fact which was false and known to be false by defendant . . . ." (internal quotation marks omitted)). "The usual measure of damages for conversion is the value of the property at the time and place of conversion . . . ." *Fantis Foods, Inc. v. Standard Importing Co.*, 402 N.E.2d 122, 125 (N.Y. 1980); *accord Overton v. Art Fin. Partners LLC*, 166 F. Supp. 3d 388, 402 (S.D.N.Y. 2016) (applying New York law).

The trial record contains ample evidence from which a reasonable jury could conclude that MasterCard, intentionally and without authority, interfered with ICC's right of possession in $2.78 million by making a knowingly false statement in order to draw down on the Letter of Credit. MasterCard made the representation necessary to obtain the funds -- that the $2.78 million MasterCard sought to draw down comprised either (1) amounts MasterCard paid to merchants or (2) amounts due and payable to merchants. A reasonable jury could conclude that MasterCard knew that neither of the two conditions was met. As to the first condition, it is undisputed that MasterCard did not pay any amount to any ICC merchant. As to the second condition, a reasonable jury could conclude that MasterCard knew that it was false to represent that $2.78 million was due and payable to merchants at the time of the drawdown based on the following evidence:

First, the evidence was sufficient for the jury to conclude that it was false to say that $2.78 million was due and payable to merchants in April 2013. A December 2012 email from ICC's CEO Khalil Alami to MasterCard states that over 80% of ICC's merchants, which represented over 90% of its volume, were "up to date and paid daily." At trial, Alami confirmed that ICC was "striving" to pay every merchant "on a daily basis" rather than within the five-day period contemplated by ICC's standard merchant agreement. A reasonable jury could conclude that ICC had accomplished its goal, and thus $2.78 million was not due and payable as of the

drawdown on April 1, 2013.  This conclusion is bolstered by the evidence that ICC's acquiring volume had been declining since 2008, meaning that ICC had fewer transactions to process with fewer possibilities for late payment.

Second, the evidence was sufficient for the jury to conclude that MasterCard knew it was false to represent that $2.78 million was due and payable to merchants.  The evidence is overwhelming that MasterCard had no idea how much, if anything, was owed to merchants.  The jury heard from multiple MasterCard witnesses who testified that they did not know of any amounts due and payable to merchants at the time of the drawdown.  For example, one employee testified that MasterCard "did not have the specific amounts that [ICC] owed to merchants," and another employee answered in the negative when asked if she had "any personal knowledge of specific amounts which were due to any specific merchants."  Three days before the drawdown, one MasterCard employee conceded that MasterCard did not "know the extent of merchant non[-]payment" and another wrote that, if MasterCard waited to draw down, its grounds for doing so could become "more robust."  One employee suggests that only by drawing down could MasterCard gain the "leverage" needed to "open up [ICC's] books."  A reasonable jury could infer that MasterCard was attempting to exert pressure on ICC by drawing down on the Letter of Credit, despite knowing that $2.78 million was not due and payable to merchants.

MasterCard also never paid any funds to any ICC merchants, even though the March 28 email suggests that it planned to use the funds from the Letter of Credit to compensate merchants for amounts ICC failed to pay them.  A reasonable jury could conclude that MasterCard never paid any merchant because no amounts were due and payable to any of them.  MasterCard argues that the jury was instructed that any post-drawdown conduct is irrelevant, but this argument misapprehends the instruction.  In its final jury instruction, the Court told the jurors:

"You should consider only whether MasterCard's drawdown was without authority. The [L]etter of [C]redit does not create an obligation for MasterCard to use the funds for any particular purposes after the drawdown." This instruction makes clear that the alleged conversion was based on the drawdown, not MasterCard's subsequent retention of funds. MasterCard's post-drawdown conduct is relevant to the extent it supports the inference that there were no merchants to pay.

The evidence in the record is far from "so overwhelming that reasonable and fair minded [persons] could not arrive at a verdict against [MasterCard]." *Warren*, 823 F.3d at 139. MasterCard cites trial testimony and exhibits suggesting (to a greater or lesser extent) that ICC continued to pay merchants for some months following ICC's termination. None of that evidence compels the conclusion that at least $2.78 million or more was due and payable on April 1, 2013, or that MasterCard had any basis to believe that ICC owed at least $2.78 million to merchants. The jury was entitled to conclude, as it apparently did, that even if some amount was due and payable to merchants on April 1, 2013, MasterCard's statement that $2.78 million was due and payable was false, and MasterCard knew it was false as to the entire $2.78 million because it had no idea what, if any, amount was owing.

MasterCard's reliance on ICC's failure to produce, either before or after the drawdown, a list containing any outstanding payables is misplaced. At trial, the Court provided an adverse inference instruction advising the jurors that they "may, but are not required to, conclude that the documents ICC failed to produce were unfavorable to ICC on the issue of whether ICC timely paid its merchants." MasterCard does not show that ICC's failure to produce documents *compels* a reasonable jury to infer that $2.78 million was due and payable to merchants as of April 1, 2013.

MasterCard's challenge as to damages also fails. First, MasterCard waived any objection to the amount of the damages by raising it for the first time in its reply brief. *See, e.g.*, *Schlosser v. Time Warner Cable Inc.*, No. 14 Civ. 9349, 2017 WL 2468975, at *6 (S.D.N.Y. June 7, 2017) (challenge raised for the first time in a reply brief was waived).

Second, even assuming MasterCard had not waived its challenge, it has failed to show that no reasonable jury could find ICC's damages to be $2.78 million. The Court instructed the jury, "The damages should equal the $2.78 million or any portion of that amount that you find MasterCard intentionally and without authority drew down on ICC's letter of credit." *Accord Fantis Foods*, 402 N.E.2d at 125 (noting the "usual measure" of damages is the value of the converted property at the time and place of conversion). The "calculation of damages is the province of the jury" and "considerable deference" should be given to the jury's award, *Restivo v. Hessemann*, 846 F.3d 547, 587 (2d Cir. 2017), including in the context of conversion claims, *see* 23 N.Y. Jur. 2d Conversion, Etc. § 63 (2d ed., May 2017 update) ("It is for the jury to fix the damages in an action for conversion, and it is improper for the court to direct a verdict."). As explained above, a reasonable jury could find that MasterCard's drawdown as to every dollar of the $2.78 million was unauthorized because its statement that $2.78 million "represent[ed] funds . . . [d]ue and payable" to merchants was knowingly false. The Court cannot disturb the jury's damages calculation.

In sum, MasterCard has failed to show that, viewing the evidence in the light most favorable to ICC, a reasonable juror would have been compelled to accept MasterCard's view that it did not convert $2.78 million when it drew down on the Letter of Credit.

## IV.    CONCLUSION

For the foregoing reasons, MasterCard's motion for judgment as a matter of law is

DENIED, and its counterclaim seeking declaratory judgment is dismissed.  The Clerk of Court is

respectfully directed to close the motion at Docket Number 326.

Dated: August 21, 2017
       New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE